JANET J. HANSON, Plaintiff and Counterdefendant-Appellant, *v.* RONALD H. HANSON, Defendant and Counterplaintiff-Appellee.

Third District   No. 75-475

Opinion filed January 7, 1977.—Rehearing denied February 15, 1977.

John Ames, of Moline, for appellant.

Braud, Warner, Neppl & Westensee, Ltd., of Rock Island (Dennis A. DePorter, of counsel), for appellee.

Mr. JUSTICE BARRY delivered the opinion of the court:

Counterdefendant, Janet J. Hanson, filed this appeal from the denial of her petition to vacate a divorce decree and from the denial of her post-trial motion for discovery.

Ronald and Janet Hanson were married on August 10, 1963. Three children were born of the marriage. Counterdefendant initially filed a complaint for divorce from her husband but the divorce finally granted on August 29, 1975, was based on the counterplaintiff husband's counterclaim for divorce on grounds of mental cruelty. Custody of the three minor children was awarded to the counterplaintiff without any provision for child support from the counterdefendant wife. An extensive property settlement agreement was entered into by counterdefendant and counterplaintiff and was incorporated into the divorce decree. Besides providing for child custody in counterplaintiff, no child support from counterdefendant and reasonable specific visitation rights for counterdefendant, the decree provided in part the following in terms of property settlement:

> "4. That counter-plaintiff shall be awarded all interest in the two pieces of farm real estate and the wife shall execute a quit claim deed to both properties, conveying all interest in said properties to the counter-plaintiff.
> 5. That counter-plaintiff shall pay to the wife as alimony One

Hundred Fifty ($150.00) Dollars per month commencing the first day of the month following the date of divorce; said payments to continue for seven (7) years thereafter.

6. The counter-plaintiff shall also contribute Five Hundred ($500.00) Dollars cash upon entry of the Decree of Divorce to go towards the wife's attorney's fees and expenses; said alimony payments to be paid through the Child Support Division of the Henry County Circuit Clerk. An additional $500.00 shall be paid directly to the wife on the date of the entry of the decree of divorce by the counter-plaintiff. Another $500.00 shall be paid to the wife on June 6th, 1975 by the counter-plaintiff.

7. The counter-plaintiff shall pay all court costs incurred in this matter.

8. The counter-defendant shall get a 1973 Dodge D-100 truck and counter-plaintiff shall hold the counter-defendant harmless from any obligations arising thereon.

* * *

11. The counter-defendant shall receive the goats except for the children's pet goats, loveseat, china set, one-half of the goblets, personal belongings and books, sewing machine and the counter-defendant shall pick up these items at her convenience.

12. The counter-plaintiff shall be awarded all the rest in [*sic*] the remainder of the personal property."

Counterdefendant raises four issues on appeal: (1) Whether counterplaintiff adduced proof of mental cruelty and his own freedom from provocation sufficient to support the granting of a divorce; (2) whether counterdefendant actually entered into the settlement agreement willingly and knowingly; (3) whether the settlement agreement was reasonably fair and sufficient, having regard to the circumstances of the parties; and (4) whether discovery should have been allowed after trial but prior to a hearing on counterdefendant's petition to vacate.

■■ Counterdefendant alleges that the record does not contain positive evidence supporting mental cruelty as grounds for the divorce or that counterdefendant's conduct was unprovoked or that the alleged conduct by counterdefendant had an adverse effect upon the health and nerves of counterplaintiff. In support of her argument counterdefendant cites *Farnbach v. Farnbach* (1971), 1 Ill. App. 3d 74, 273 N.E.2d 12. We agree that the elements of mental cruelty, lack of provocation by counterplaintiff and an adverse effect on counterplaintiff's health must be alleged and proved by competent evidence. We find, however, that the record does reflect adequate allegations on counterplaintiff's part and evidence to support those allegations. Specifically counterplaintiff not only alleged that counterdefendant's acts of mental cruelty were

unprovoked, but testified that he had been a true, kind, affectionate husband through the course of the marriage. Counterdefendant introduced no evidence that her acts of mental cruelty were provoked in any manner. Counterplaintiff also alleged and testified that his wife had been guilty of engaging in a course of conduct that amounted to extreme and repeated mental cruelty, although this testimony was only a conclusion, counterdefendant did not object to it. Further counterplaintiff testified, in support of the alleged mental cruelty, to long tedious arguments into the wee hours of the morning, which occurred often, and that counterdefendant had without cause often accused counterplaintiff of being unfaithful to her. Counterdefendant neither denied or attempted to refute this testimony when she testified. Counterplaintiff also testified to the effect of counterdefendant's conduct upon his health and nerves. He claimed at the trial that his wife's conduct had been such as to create disturbances in his life and in his mental attitude. The case of *Farnbach v. Farnbach* (1971), 1 Ill. App. 3d 74, 273 N.E.2d 12, is distinguishable. In that case there was an absence of both allegations and proof of mental cruelty. In the present case not only were there sufficient allegations of mental cruelty contained in the pleadings, but sufficient evidence was contained in the record to support a divorce on grounds of mental cruelty.

■■ Counterdefendant next contends that she neither knowingly nor voluntarily entered into the property settlement agreement and in the alternative that the agreement incorporated into the decree was neither fair nor sufficient as to the amount of the property settlement. The record does not support these contentions. Counterdefendant was an intelligent, literate person with a good education, having worked as a classroom teacher and in the Office of Special Education in Rock Island, Illinois. She was represented by several competent attorneys throughout the proceedings. At the divorce hearing counterdefendant was asked by the court if the provisions set out in the agreement were agreeable to her and she answered affirmatively. She admitted that she had read the agreement and knew what it contained. Although the record indicates that she testified her relinquishment of the marital residence on a 75-acre tract, which was held in joint tenancy, and approximately 175 acres of farmland to which she had contributed money was not "very agreeable" to her, she admitted in response to questions by the trial judge that the agreement would be satisfactory to her in light of money and other property she would receive by the agreement. The evidence contained in the record dispels any claim that counterdefendant did not knowingly or willingly enter into the property settlement agreement. The fact that counterdefendant, represented by counsel, chose to sign a property settlement stipulation and admitted to entering into the agreement in

open court and apparently chose not to exercise her right to a partition of the property is indicative of counterdefendant's awareness and approval of the results of lengthy negotiations. The case of *Filko v. Filko* (1970), 127 Ill. App. 2d 10, 262 N.E.2d 88, is controlling. The court there held where the wife did not show any substantial variance between the terms of the settlement in the decree stipulated to and the wife's testimony agreeing with the terms of the stipulation, and where there was no showing of any fraud or that the wife's attorney was not properly representing her, the agreed stipulation was voluntary, valid, binding and enforcible. The facts in the instant case are strikingly similar.

■■ Counterdefendant cites *James v. James* (1958), 14 Ill. 2d 295, 152 N.E.2d 582, for the proposition that divorce property settlement contracts must not only be free from the taint of actual fraud and coercion, but must also be reasonably fair and sufficient, having regard for the station in life and circumstances of the parties. We have examined the *James* case carefully and conclude that the holding there was based, for the most part, upon a determination that the wife entered into the agreement unknowingly and unwillingly due to coercion and misrepresentation. The finding that the agreement was not reasonably fair and sufficient was incidental and not necessary to the decision of the case. While we agree that the settlement agreement here was not entirely equally balanced between the parties, we will not substitute our judgment as to the fairness of the agreement for that of the trial judge and the parties themselves at the time of the divorce, when it is apparent that both husband and wife entered into the stipulated property settlement knowingly and voluntarily and so acknowledged full agreement in open court.

Counterdefendant finally argues that her post-trial discovery motion was erroneously denied. No cases on this point were cited to us and our study uncovered none. The applicable section of the Civil Practice Act, (Ill. Rev. Stat. 1973, ch. 110A, par. 201(b)(1)) is also not decisive of the issue. In the light of our holding that the divorce decree was properly entered in the first instance, the irrelevancy of the material which compliance with counterdefendant's discovery motion might have revealed in attacking the decree is apparent.

The judgment of the Circuit Court of Henry County is affirmed.

Affirmed.

ALLOY, P. J., and STOUDER, J., concur.