LYMAN MELVIN TWADDLE, Plaintiff-Appellant, *v.* DIANE
LITCHFIELD, a/k/a Diane Sayers, Defendant-Appellee.

Third District    No. 81—683

Opinion filed May 17, 1983.—Rehearing denied July 8, 1983.

BARRY, P.J., specially concurring.

Robert G. Heckenkamp, of Heckenkamp and Simhauser, of Springfield,
for appellant.

James J. Elson, Chartered, of Canton, for appellee.

JUSTICE SCOTT delivered the opinion of the court:
This action arises out of an automobile-motorcycle collision which
occurred in rural McDonough County. Following a jury trial in the
circuit court of that county, a verdict was returned for the defend-
ant. This appeal has been prosecuted by the plaintiff, who seeks a

new trial.

On April 9, 1977, the plaintiff, Lyman Melvin Twaddle, was driving his motorcycle south on Candy Lane Road. Riding with him was a passenger, Melodie McGrew. Candy Lane was a two-lane, blacktopped road south of Macomb, Illinois, which proceeded generally in a north and south direction. It was straight, with a dip to the north of and near the place of the collision in question.

Three miles south of Macomb's Grant Street, Candy Lane forms a "T" intersection with a road that runs to the west, but not to the east. As the plaintiff approached this intersection on his motorcycle, he was followed by an automobile driven by the defendant, Diane Litchfield (Sayers). Arriving at the "T" intersection, the plaintiff made a right turn toward the west, made a "U" turn on the intersecting road, made a rolling stop, and then re-entered Candy Lane Road going north. As the plaintiff's motorcycle re-entered Candy Lane Road, it crossed the path of defendant's oncoming automobile. The defendant, fearing a collision, applied the automobile's brakes. The application of its brakes caused the automobile to skid into the northbound lane of Candy Lane where a collision occurred between the automobile and the plaintiff's motorcycle.

As previously recounted, a suit was filed, and in the trial which followed the plaintiff advanced the position that he was traveling in his lawful lane of traffic, and that defendant's actions which caused her automobile to skid into the northbound lane of traffic were negligent. In contrast, the defendant advanced the position that her reaction in applying the brakes was a reasonable response to an emergency situation created by the plaintiff's failure to yield, and therefore the resultant skid into the northbound lane was legally excusable.

On appeal, the plaintiff urges that the verdict of the McDonough County jury was against the manifest weight of the evidence. Although the statement of facts previously set forth is somewhat abbreviated, we have nevertheless thoroughly reviewed the record of proceedings below and we cannot agree with the plaintiff that the position advanced by defendant is not supported by credible evidence. Indeed, the evidence presents a close case, and the jury verdict reflects a careful consideration of the contrasting positions of the litigants. None of the cases cited by the plaintiff, *Calvetti v. Seipp* (1967), 37 Ill. 2d 596, 227 N.E.2d 758, *Martin v. Miles* (1963), 41 Ill. App. 2d 208, 190 N.E.2d 473, *Nikkinen v. Evans* (1967), 90 Ill. App. 2d 438, 232 N.E.2d 774, and *Graves v. Wornson* (1978), 56 Ill. App. 3d 873, 371 N.E.2d 692, involve the question of one's con-

duct when confronted with an emergency where the standard of care imposed by law may be less stringent than in other circumstances. (*Borus v. Yellow Cab Co.* (1977), 52 Ill. App. 3d 194, 367 N.E.2d 277.) Thus, the rule announced in those cases must be distinguished from the instant case.

Another alleged error urged upon us by the plaintiff involves the defendant's failure to comply with the pretrial discovery requests made upon her. In defendant's answers to plaintiff's interrogatories she stated that she had 10 photographs taken by her insurance carrier, eight of the collision site, one of the motorcycle and one of the automobile. Defendant was requested to produce these photographs in her possession. Prior to trial, the defendant produced xerox copies of seven photographs. At the time of trial, the defendant produced seven original photographs taken by her insurance carrier and three slide transparencies taken by her attorney.

As a further part of pretrial discovery, plaintiff requested that the defendant produce all discoverable notes or memoranda relating to the collision. That request was purportedly complied with on March 8, 1979. When the seven original photographs were produced at trial, it was revealed that written on the backs of the photographs were notations concerning the collision scene, the length of the defendant's skid marks, and the exact point of impact. None of these notations were produced on March 8, 1979. The plaintiff's counsel, unprepared for this revelation of newly discovered matter at the commencement of trial, demanded that the defendant stipulate into evidence the substance of the notation concerning the length of defendant's skid marks, or in the alternative, that the court order a continuance to permit the plaintiff an opportunity to subpoena the notation's author. The trial court indicated that it was not adverse to continuing the matter pursuant to plaintiff's demand, and following a recess in the proceedings, the litigants returned to court and entered into the stipulation demanded.

The photographs again became an issue in post-trial proceedings before the court. At that time, the plaintiff directed the court's attention to answers given by the defendant in response to the plaintiff's interrogatories. Since only seven photographs were produced—the remaining three being slide transparencies—and since only seven photographs were taken by the insurance carrier—the slides having been taken by defendant's attorney—it was the plaintiff's contention that the interrogatory was incorrect or that disclosure was incomplete. In order to verify that the unaccounted for photographs taken by the insurance company had not been wrongfully withheld in the

pretrial discovery process, the plaintiff subpoenaed the insurance carrier's investigative file as well as it claims supervisor and its claims adjuster.

The defendant objected to this procedure which she characterized as unauthorized post-trial discovery, and dismissed the apparent inaccuracy of the interrogatory response as mere inadvertence. Despite objection, the trial court permitted plaintiff's counsel to question both the claims supervisor and the claims adjuster. The court did not permit plaintiff's counsel to examine the insurance carrier's file; however, the court did impound the insurance carrier's file as maintained by its claims adjuster, and the file of defendant's attorney, for the purpose of inspecting both files *in camera*. Further, the court ordered those parts of the insurance carrier's "original investigative file" having "anything to do with [the] photographs" to be certified to and produced by an officer of the carrier. Following the trial court's *in camera* inspection of the impounded files, it denied the plaintiff's post-trial motion which sought a finding that defendant had failed to make a good faith pretrial discovery response.

■ Plaintiff now urges that a new trial should be granted because he was denied a continuance upon the revelation of the undisclosed notations and because he was denied the opportunity after trial to examine the insurance carrier's investigative file. With regard to the matter of the continuance, we cannot agree that the trial court denied the plaintiff's request, let alone that it erred in doing so. As previously recited, plaintiff's demand was made in the alternative as follows:

> "I would call upon Counsel [for the defendant] at this time to stipulate that if, in view of these circumstances and in view of having been taken by surprise since we have been here in this matter, call upon him to stipulate that \*\*\* if the person who took these photographs was here, he would testify that the skid marks that he found on this photo or exhibit measured 105 feet. In the alternative, I would ask for a continuance of this trial \*\*\*."

The trial court responded that it "wouldn't be adverse to continuing this." A recess was taken and following a recess the stipulation demanded was agreed to on the record. We do not believe justice would be served if the plaintiff here were granted a new trial for the reason that the very stipulation he demanded, albeit in the alternative, was agreed to by the defendant. Moreover, the refusal of a continuance is not prejudicial where the anticipated testimony of an absent witness is admitted. *Kellyville Coal Co. v. Strine* (1905), 217

Ill. 516, 75 N.E. 375.

■■ ■ Likewise, we do not believe the plaintiff is entitled to a new trial because he was denied the opportunity to examine the insurance carrier's investigative file. Without considering the defendant's contention that there is no statutory authority for post-trial discovery, we would observe that all discovery is limited by certain basic restraints. For example, the information sought to be discovered must be relevant (73 Ill. 2d R. 201(b)(1)), it must not be privileged (73 Ill. 2d R. 201(b)(2)), and it must not include strategies prepared for trial (73 Ill. 2d R. 201(b)(2)). Under the facts of the instant case, the only issue raised by the post-trial motion involved defendant's good faith in producing all the photographs in her possession. Thus, the only material which could have been relevant under the general rules which govern all discovery was material relating to the photographs and the number taken. Yet, under these circumstances, the relevant information in the files sought to be examined was intermingled with nondiscoverable privileged matters and work product. Faced with this dilemma, the trial court impounded the subpoenaed files, reviewed them, and made available to the plaintiff those parts of the file relevant to plaintiff's post-trial inquiry. This method of proceeding afforded plaintiff the opportunity he sought to verify that discovery had been conducted in good faith, while protecting the confidentiality of defendant's privileged matters and work product. The trial court's authority to so supervise the discovery process is clearly granted by the Supreme Court Rules (73 Ill. 2d R. 201(c)), and we believe the trial court's exercise of its supervisory authority under these circumstances adequately protected the rights of both litigants.

To additionally insure that no bad faith occurred in the pretrial discovery phase of this action, we have meticulously examined the impounded files, and we find nothing to indicate that the insurance carrier ever exposed or possessed more than seven photographs. The statement by the defendant that the insurance carrier took 10 photographs—when in fact the defendant's attorney took three of the 10 appears to be a careless, inexact response to the interrogatory propounded; however, it does not appear that three photographs were secreted or withheld. We find no attempt by the defendant to subvert the discovery process by intentionally withholding information or photographs which should have been produced in discovery, nor do we conclude that the defendant's inexact response engendered such confusion as to require the granting of plaintiff's post-trial motion for imposition of sanctions.

For the reasons set forth the judgment of the circuit court of McDonough County is affirmed.

Affirmed.

STOUDER, J., concurs.

PRESIDING JUSTICE BARRY, specially concurring:

This was a contributory negligence case. The ultimate question before us is whether the defendant's fractional discovery prejudiced this plaintiff. In the final analysis I think not. However, as is indicated by the majority, "indeed, the evidence presents a close case, ***." The critical fact is whether the motorcycle was headed north in its proper lane. No photograph of the damaged area of the motorcycle was produced by the company. Only a photograph of the undamaged rear of the motorcycle was produced.

This close case deserves more careful scrutiny for a special reason—here we have a common insurer, insuring both the plaintiff and the defendant. We know from *Monier v. Chamberlain* (1966), 35 Ill. 2d 351, 221 N.E.2d 410, that absolute good faith and a stricter standard of disclosure is necessary in such cases. With these principles in mind, and considering that the objective of discovery is disclosure, I have painstakingly reviewed the record. The question thus is whether this insured did in fact comply with the standard of disclosure applicable to this case. There is evidence of noncompliance. In his post-trial motion the plaintiff requests appropriate sanctions for failure to make good faith discovery. Consideration must be given to whether the noncompliance was so substantial as to have been prejudicial.

About a month after the accident, on May 6, 1977, the insurance company determined that it also insured Mr. Twaddle. Prior thereto Mr. Twaddle cooperated with the company, giving a statement regarding the incident, and submitting bills and medical reports regarding his injuries. Ultimately, during October 1977, Mr. Twaddle engaged counsel to represent him, suit was filed several months later, and about two years thereafter interrogatories were propounded to Diane Litchfield, the defendant. In response, the defendant, with the aid of insurance company counsel, responded that 10 photographs were taken "right after the accident" by the insurance company.

As the trial commenced, in August 1980, only seven original photographs were given over to plaintiff's trial counsel by the insurance

company's defense counsel in compliance with plaintiff's discovery requests and for possible introduction into evidence. Legends on the back of some of the photographs were then revealed for the first time. The trial court indicates that all parties concerned were genuinely surprised. This was the first and only evidence of the skid marks put down by the defendant's automobile, obviously a fact of more than passing importance. No skid marks were noted on the police report.

The foregoing, constituting at the very least less than full discovery of investigative matters when total discovery is required by the common insurance carrier, prompted post-trial proceedings by the plaintiff in an attempt to prove that the company denied him access to materials to which he was entitled in preparation for trial against another insured. He asked only for the company's investigative file as it existed prior to the date he engaged counsel in October of 1977. The opinion of the trial judge was that the discovery matters in the case were "highly disputed" and merited a full hearing.

I have scrutinized the impounded files and find no reference disclosing anything more than that some photographs were taken by one of two investigating company adjusters, apparently within two days following the accident, "probably the day that [they] learned of the accident." The company transmittal photo envelope included in one of the impounded files had no blanks completed regarding the number of photographs taken, or otherwise. It bore only the legend "Sayers," the name of the defendant Litchfield as of her marriage on June 17, 1978—about one year after the accident.

Near the end of that lengthy post-trial hearing the insurance defense counsel refused to allow his and his company's *entire* files to be viewed *in camera* by the court. It appears that there were three, or possibly four, company files in all. The trial judge, Judge Charles Wilhelm, in attempting to fashion a remedy for which there are no post-trial discovery rules, settled for defense counsel's interpretation of what was his own work product and what was the content of his client's investigative files. The record does not support the majority's assertion that the trial judge ever had an opportunity to review the *entirety* of the files. My review of the record indicates that the trial court permitted defense counsel to extract from the files any of those parts that he, the defense counsel, chose to cull out. In my opinion, that was error. To distinguish relevant investigative information from nondiscoverable privileged matters and work product is properly the chore of the trial court.

Finally the trial judge, in denying the post-trial motion of the

plaintiff, wrongly indicates that the *entire* file was requested to be discovered by the plaintiff. The record supports that only the investigative file, prior to the date the matter became an adversary proceeding, in October of 1977, was requested, and that except for copies of two letters he was refused access. The response was inadequate. The motion for reconsideration was filed in response to that denial, but no transcript is found in the record on review of that hearing. The motion to reconsider was denied, but we do not have the benefit of the court's reasoning therefor.

Nonetheless, in this case, since I am convinced that the plaintiff was not prejudiced, I do not believe that the severe sanction of a new trial would be appropriate.

I, therefore, concur in the result reached by the majority.