KIMBERLY WILLING, Plaintiff-Appellee, v. ST. JOSEPH HOSPITAL *et al.*, Defendants (Jennifer A. Midlock, Contemnor-Appellant).

First District (4th Division)   No. 87—1841

Opinion filed September 22, 1988.—Modified on denial of rehearing December 15, 1988.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith, Jennifer A. Midlock, and Kathryn A. Spalding, of counsel), for appellant.

William J. Burke and Linda A. Leonetti, both of James Thomas Demos & Associates, Ltd., of Chicago, for appellee.

JUSTICE JOHNSON delivered the opinion of the court:

This is an appeal from the order of the circuit court of Cook County finding Jennifer A. Midlock, counsel for defendants, St. Joseph Hospital, Charlotte Dennee, CST, and Julie Antioho, R.N., in contempt of court for failure to comply with the court's order to produce certain documents. Contemnor raises the following issues on appeal: (1) whether the documents ordered to be produced are privileged under sections 8—2101 and 8—2102 of the Code of Civil Procedure (the Medical Studies Act) (Ill. Rev. Stat. 1983, ch. 110, pars. 8—2101, 8—2102); and (2) whether the documents requested, which are dated after the alleged malpractice, are discoverable.

We affirm.

On July 3, 1984, Kimberly Willing, plaintiff, filed a medical malpractice suit against defendants, St. Joseph Hospital (hereinafter the Hospital), Victor V. Kitt, M.D., Charlotte Dennee, CST, and Julie Antioho. By amendment, Gabriel Angres, M.D., and George Podlusky, M.D., were added as defendants. Plaintiff's amended complaint alleged, in part, that defendant Hospital negligently extended surgical privileges to defendant Dr. Kitt and negligently authorized him to perform surgery on her on July 30, 1982.

During discovery, plaintiff served interrogatories on defendant Hospital. The interrogatories inquired into the privileges extended to Dr. Kitt, including any imposed restrictions or revocations. Information was also requested concerning the Hospital's knowledge of any lawsuits or claims, not resulting in lawsuits, filed against Dr. Kitt. In response to the interrogatories the Hospital produced Dr. Kitt's privilege card and stated that there were no restrictions placed upon him as of July 30, 1982, other than what appears on the privilege card. The Hospital further stated that it had no knowledge of any other restrictions imposed on Dr. Kitt by other medical institutions. However, defendant Hospital was aware of certain lawsuits filed against him, but not of any claims that did not result in lawsuits made prior to July 30, 1982.

Plaintiff also served subpoenas on the following nonparties: Alexian Brothers Medical Center, St. John's Hospital, Memorial Medical Center, Sherman Hospital, and the University of Chicago Hospital and Medical School. The subpoenas requested that the following documents be produced:

1. Any and all materials maintained on Dr. Kitt, including

but not limited to his entire credentials file, applications for appointment to staff, applications for specific privileges, references, transcripts, reappraisals, evaluations, recommendations, initial privileges, restrictions to privileges, revocation of privileges, letters of resignation or withdrawal.

2. The written criteria or standards which must be satisfied for granting each category of privilege granted to Dr. Kitt.

3. Any and all written rules; regulations, policies or procedures for medical doctors on staff for the departments of surgery, plastic surgery and otolaryngology.

Dr. Kitt, Sherman Hospital, St. John's Hospital, and Memorial Medical Center objected and moved to quash the respective subpoenas. They claimed the requested documents are privileged, pursuant to the Medical Studies Act (Ill. Rev. Stat. 1983, ch. 110, par. 8—2101 *et seq.*) (hereinafter the Act).

After hearing plaintiff's motion for a rule to show cause and arguments from all parties involved, on February 17, 1987, the court entered an order compelling defendant Hospital and other nonparty medical facilities to produce the following documents:

"[A]ll applications for appointment [*sic*] to staff and applications for appointment for specific privileges; all references; educational transcripts; intial [*sic*] privileges granted along with any and all changes to the privileges including restrictions, revocations; all letters of resignation or withdrawal as they pertain to Victor V. Kitt, M.D.; all written criteria or standards which must be satisfied for granting of each category of privileges granted to Dr. Kitt; *** any and all written rules, regulations, policies or procedures for medical doctors on staff at the above hospitals for the Departments of Surgery, Otolarygology [*sic*] and Plastic Surgery."

On February 19, 1987, the trial court modified its order of February 17, deleting the words, "all references" and ordered all of the remaining information produced by March 19, 1987.

On May 7, 1987, defendant Hospital moved to vacate the February 17 and 19 orders, alleging again that the records sought were privileged under the Act. The motion was denied. Thereafter, contemnor stated to the court that although she was in possession of the documents to be produced, she would not comply with the order. The trial court held her in contempt and fined her the sum of $1.

Contemnor contends that the trial court erred in ordering the Hospital to produce the documents at issue. She argues that this order violated the Act, which specifically provides that these records

are privileged and not discoverable.

■ Section 8—2101 of the Code of Civil Procedure provides as follows:

> "All information, interviews, reports, statements, memoranda or other data of the Illinois Department of Public Health, Illinois State Medical Society, allied medical societies, physician-owned inter-insurance exchanges and their agents, or committees of accredited hospitals or their medical staffs, including Patient Care Audit Committees, Medical Care Evaluation Committees, Utilization Review Committees, Credential Committees and Executive Committees, (but not the medical records pertaining to the patient), used in the course of internal quality control or of medical study for the purpose of reducing morbidity or mortality, or for improving patient care, shall be privileged, strictly confidential and shall be used only for medical research, the evaluation and improvement of quality care, or granting, limiting or revoking staff privileges ***." (Ill. Rev. Stat. 1983, ch. 110, par. 8—2101.)

Additionally, "[s]uch information, records, reports, statements, notes, memoranda, or other data" are not discoverable or admissible as evidence. (Ill. Rev. Stat. 1983, ch. 110, par. 8—2102.) The purpose of section 8—2101 is to ensure that members of the medical profession will effectively engage in self-evaluation of their peers, in the interest of advancing the quality of health care. "The Act is premised on the belief that, absent the statutory peer-review privilege, physicians would be reluctant to sit on peer-review committees and engage in frank evaluations of their colleagues." *Jenkins v. Wu* (1984), 102 Ill. 2d 468, 480.

■ The Illinois Supreme Court in *Richter v. Diamond* (1985), 108 Ill. 2d 265, addressed a similar discovery request as the one made here. In *Richter*, the trial court held Northwestern Memorial Hospital in civil contempt for its refusal to answer certain supplemental interrogatories requested by the plaintiff. Plaintiff alleged that Northwestern failed to exercise supervision over the defendant, Dr. Edir B. Siqueira. The interrogatories at issue in the case inquired into the nature and extent of the surgical privileges granted to Dr. Siqueira. Specifically the interrogatories requested the following:

> " '1. State whether at any time between 1964 and September 12, 1980, Edir Siqueira, M.D.'s privileges as a member of the medical staff of the defendant hospital were restricted.
>
> 2. If the answer to the foregoing interrogatory is in the affirmative, state:

(a) the inclusive dates of any restrictions;

(b) the specific nature of the restrictions;

(c) the specific conditions imposed upon Dr. Siqueira's privileges by the restrictions.' " (*Richter*, 108 Ill. 2d at 267.)

On direct appeal, the Illinois Supreme Court affirmed the trial court's order. More specifically, the court emphasized the purpose of the Act as mentioned above. Recognizing the objectives of the Act, the court found that the statutory privilege applies to the peer-review process; however, the privilege is not accorded to the imposition of restrictions that may result from the process. (*Richter*, 108 Ill. 2d at 269.) Accordingly, the court held that the information sought in the supplemental interrogatories was outside the scope of section 8—2101 and, therefore, not privileged.

In rendering its decision in *Richter*, the supreme court reaffirmed the appellate court decision in *Gleason v. St. Elizabeth Medical Center* (1985), 135 Ill. App. 3d 92, wherein the court noted the limited scope of the statutory privilege. The *Gleason* court held that the trial court did not err in ordering defendant, St. Elizabeth Medical Center, to answer certain interrogatories. The interrogatories inquired into the steps the hospital took to supervise defendant, Dr. Heiman, after depositions were taken in other malpractice complaints. The names of persons who provided information about Dr. Heiman prior to his affiliation with defendant's staff were also sought.

In holding that the information sought was outside the scope of the Act, the court in *Gleason* stated:

"While virtually every action of a doctor or hospital could, in some sense, arguably be connected to something that was said, done or recorded at a peer review session, the statute evinces a legislative intent to shield the review process itself, and not actions later taken in consequence of that process." *Gleason*, 135 Ill. App. 3d at 95.

Recently, in *Payne v. Nicholas* (1987), 156 Ill. App. 3d 768, the plaintiff contended that the trial court erred in allowing defendant to testify concerning his surgical privileges since she would have been barred from discovering such information under the Act. The court held that this contention was without merit. The court cited *Richter v. Diamond* (1985), 108 Ill. 2d 265, as authority, concluding that "interrogatories concerning the nature and extent of a physician's staff privileges, including the nature and extent of restrictions imposed by the hospital, seek information which is not protected by the medical studies act." *Payne*, 156 Ill. App. 3d at 779.

Clearly the above court decisions are controlling here and es-

tablish that the documents at issue are outside the scope of the Act. The first category of records ordered to be produced concerned Dr. Kitt's educational transcripts and applications for appointment to staff and for specific privileges. These items are obviously not a part of the peer-review process. These documents are voluntarily submitted in order to be granted privileges and to be considered for a staff position. The court also ordered production of materials regarding the initial privileges granted to Dr. Kitt and any modifications thereof, including restrictions and/or revocations. *Richter* specifically held that these documents are not accorded statutory privilege.

 ██ █ Dr. Kitt's applications for appointment and letters of resignation or withdrawal are either antecedent or subsequent to the peer-review process. All the cases cited above hold that only action taken during the peer-review process are protected under the Act. Finally, the court ordered the disclosure of the written criteria of standards that must be satisfied for each category of privileges granted to Dr. Kitt. The written rules, regulations, policies, and procedures for doctors on staff in the departments of surgery, plastic surgery, and otolaryngology at the Hospital were also a part of the court's order. Again, the information contained in these documents is not of the type that thwarts the purpose of the Act, in the sense of compromising the statutory goal of candid evaluation of peers in the medical profession.

Contemnor adamantly argues that the legislature specifically stated that all such information is subject to the statutory privilege. To support her position, contemnor relies on *Mennes v. South Chicago Community Hospital* (1981), 100 Ill. App. 3d 1029, and *Matviuw v. Johnson* (1979), 70 Ill. App. 3d 481. The *Mennes* court cited *Matviuw* as authority, holding that the trial court erred in concluding that hospital records regarding the granting and extension of staff privileges were not discoverable under the Act. *Mennes*, 100 Ill. App. 3d at 1030-31.

Both of the above cases cited by contemnor were decided prior to *Richter v. Diamond* (1985), 108 Ill. 2d 265. As discussed above, *Richter* narrowed the applicability of the Act. To this extent the holdings of *Mennes* and *Matviuw* are limited.

Contemnor's reliance on *Niven v. Siqueira* (1985), 109 Ill. 2d 357, is also without merit. The issue before the court in *Niven* was whether documents used by the Joint Commission on the Accreditation of Hospitals, in determining whether to accredit a hospital, are discoverable. The court held that the information requested fell within the purview of the Act. The court concluded that "materials in the

hands of any legitimate medical society are protected by the Act so long as those materials were used as part of a study or program designed to improve quality control or patient care, or reduce morbidity or mortality." *Niven*, 109 Ill. 2d at 366.

Contrary to contemnor's assertion, the court did not hold that all materials belonging to a health care institution are protected under the Act. The court clearly stated that "[t]he applicability of a discovery privilege is a matter of law for the court to determine, but the question of whether specific materials are part of a medical study is a factual question within that legal determination." *Niven*, 109 Ill. 2d at 368.

■■ We find the decisions in *Richter* and *Niven* consistent. Essentially, they establish that records and documents are protected under the Act if they are utilized as part of the peer-review process and not as a result or consequence thereof. Yet, the privilege will be accorded only after each document is scrutinized in light of the Act's purpose. In the case at bar, we find that the trial court properly employed the above standard in finding that the documents requested were not privileged under the Act.

Contemnor's last contention is that the trial court erred in ordering defendant Hospital to disclose changes in privileges given to Dr. Kitt, including restrictions, revocations, letters of resignation or withdrawals, and written criteria developed after the alleged malpractice. Contemnor argues that evidence of subsequent remedial measures is inadmissible at trial to establish negligence. She relies on *Salvi v. Montgomery Ward & Co.* (1986), 140 Ill. App. 3d 896, and *Lundy v. Whiting Corp.* (1981), 93 Ill. App. 3d 244, to support her contention. Nevertheless, both of those cases concern the inadmissibility at trial of post-occurrence remedial measures. Contemnor has failed to consider the significant distinction between what will be admissible at trial and what will be discoverable prior to trial.

■■ Supreme Court Rule 201(b)(1) states that the scope of discovery is limited to "any matter relevant to the subject matter involved in the pending action." (107 Ill. 2d R. 201(b)(1).) Moreover, "[d]iscovery before trial 'presupposes a range of relevance and materiality which includes not only what is admissible at trial, but also that which leads to what is admissible at the trial.' [Citation.]" (*Monier v. Chamberlain* (1966), 35 Ill. 2d 351, 357; *Mistler v. Mancini* (1982), 111 Ill. App. 3d 228, 232.) Accordingly, considerable latitude is permitted during discovery, and the trial court has broad discretion in ruling on discovery matters. Absent a manifest abuse of its discretion, affirmatively and clearly shown, the trial court's order concerning discovery

shall not be disturbed on appeal. *Mistler*, 111 Ill. App. 3d at 233.

■■ Contemnor, in the present case, has not affirmatively shown an abuse of discretion by the trial court. The information ordered to be produced does fall within the range of relevance and materiality envisioned by the discovery rules. However, it is premature for us to determine at the discovery stage whether or not the documents sought would be admissible at trial or lead to admissible information. If, after full disclosure and discovery, all that is revealed amounts only to post-occurrence remedial measures, then the information may not be admissible at trial. Thus, the trial court did not err in ordering the production of materials dated after the alleged malpractice.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

JIGANTI, P.J., and McMORROW, J., concur.