THIRD DIVISION

December 18, 2002 

No.  1-01-4249

NATHANIEL S. SHAPO, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) 
Cook County
.

)

v. ) 

)       

TIRES 'N TRACKS, INC.,
 )
 Honorable

)
 John G. Laurie,

Defendant-Appellant, 
 ) Judge Presiding.

)

PRESIDING JUSTICE SOUTH delivered the opinion of the court:

The underlying lawsuit arises out of a self-insured workers' compensation fund, Back of the Yards Neighborhood Council Risk Management Association, Inc. (BYRMA), which became insolvent.  The Director of Insurance of the State of Illinois was affirmed by the circuit court as statutory liquidator.   Defendant, Tires 'N Tracks,
 became a part of the self-insured pool beginning in 1997.   Plaintiff, Nathaniel Shapo, the Director of Insurance of the State of Illinois, acting solely in his capacity as statutory and court-affirmed liquidator of BYRMA, assessed all members of the pool, including defendant, additional premiums necessary to pay the outstanding workers' compensation claims.  Defendant failed to pay the additional premium, and plaintiff subsequently filed suit against it.

Defendant retained the law firm of Lord, Bissell & Brook to represent it in the underlying litigation.  During the course of the litigation, the parties engaged in ongoing settlement negotiations.  On May 24, 2001, the circuit court entered an order dismissing the underlying lawsuit, with prejudice, pursuant to a settlement agreement signed by defendant's attorney, David Seghetti, retaining jurisdiction to enforce the terms of the settlement agreement.

On May 24, 2001, Aaron Cohen, vice president of Tires 'N Tracks, and son of Charles Cohen, the president of Tires 'N Tracks, made various modifications to the settlement agreement and faxed it to Kevin McJessy, an attorney at Lord, Bissell & Brook.  Upon receiving the fax, an attorney at Lord, Bissell & Brook called Aaron Cohen and informed him that the settlement agreement had already been agreed to by his father.

On July 16, 2001, plaintiff filed a motion to enforce the terms of the settlement agreement after failing to receive premiums from defendant.  Defendant discharged Lord, Bissell & Brook and retained new counsel with the firm of Stern, Holstein, Zimmerman & Hanson.  The trial court entered an order allowing defendant to retain new counsel but refused to allow the former counsel to withdraw its appearance.  The court also gave plaintiff leave to file an amended motion to enforce the terms of the settlement agreement.

Plaintiff  filed an amended motion to enforce the terms of the settlement agreement.  Thomas Zimmerman filed his appearance as attorney for defendant and its combined response to plaintiff's amended motion to enforce the terms of the settlement agreement and a motion to vacate the court order entered on May 24, 2001.  In its motion to vacate, defendant argued that the settlement agreement was void and unenforceable because its counsel lacked authority to enter into it.

Plaintiff issued subpoenas to defendant's former counsel with Lord, Bissell & Brook, Kevin McJessy and David Seghetti.  The subpoenas were served on August 14, 2001, with the amount paid for witness and mileage fees.

Defendant filed a motion to quash the subpoenas.  In its motion, defendant asserted that plaintiff failed to provide copies of the subpoenas to defense counsel; that the subpoenas failed to comply with Illinois Supreme Court Rule 237 (166 Ill. 2d R. 237); and that the testimony and documents sought in the subpoenas were work product and violated defendant's attorney-client privilege.

Alternatively, defendant moved to conduct discovery concerning the testimony and documents to be expected from McJessy and Seghetti, its former counsel, and to restrict the scope of the information and documents sought in the subpoenas on the basis of the work-product doctrine and attorney-client privilege.

The trial court denied defendant's motion to quash the subpoenas and to conduct discovery and ruled that the attorney-client privilege had been waived.  The court further ordered that it would limit the testimony of the subpoenaed attorneys as narrowly as possible
 to the specific issue with respect to the attorneys' authorization, or lack thereof, to settle the case.  The court then permitted defendant's former attorneys to testify at the hearing.

McJessy testified that in the underlying case the parties exchanged settlement agreements which contained various terms and general releases.  The plaintiff in the underlying case refused to agree to release certain claims that it had as a matter of statutory right under Illinois law.    The parties continued to negotiate until the arbitration date neared.  According to  McJessy, on or about May 22, 2001, defendant eventually agreed to the provision during a telephone conversation, which included him, Seghetti and Aaron and Charles Cohen.  Based upon that conversation wherein the Cohens agreed to the terms of the settlement, a formal agreement was drafted incorporating the terms of that agreement, and a copy was sent to the defendant for signature. 

McJessy further testified that he waited for the Cohens to return the signed agreement to him, but he never received it.  McJessy's notes of the telephone conversation wherein the Cohens agreed to the terms of the settlement were submitted as an exhibit.
  When the case came up for hearing on May 24
, McJessy still had not received a signed copy of the agreement, so Seghetti signed on behalf of the client, defendant, and the case was dismissed.  He received a fax from Aaron Cohen either later on the afternoon on May 24
 or the next day.   After receiving that fax, he spoke with Seghetti about it and asked him to call the Cohens.  On or about May 30
, he forwarded a copy of the agreement to Tire's 'N Tracks for its signature so that it would have one on file.

Seghetti testified that he had several telephone conversations with Charles Cohen concerning the contents of the settlement agreement, specifically the issue of the waiver of plaintiff's statutory rights.  He informed Charles Cohen that either they would settle the case or proceed to arbitration.  Seghetti testified that Cohen stated to him that the language in the proposed agreement was acceptable and to proceed with settlement.

Seghetti clarified that the telephone conversation between the lawyers and the Cohens  which McJessy referred to in his earlier testimony occurred prior to his conversation with Charles Cohen.  When McJessy informed him of the fax from Aaron Cohen, he called Aaron Cohen and informed him that the language he struck on the faxed copy of the settlement had already been agreed to by his father.  Seghetti testified that Aaron Cohen told him that he would speak with his father and get back to him, but he never did.   He never spoke with either Aaron or Charles Cohen again.

Charles Cohen testified that he never gave authority to either Seghetti or McJessy to enter into the settlement agreement.

Aaron Cohen testified that he never gave Seghetti or McJessy authorization to enter into a settlement agreement with plaintiff even though he had the authority to participate in and make settlement decisions on behalf of defendant.

At the close of the subpoenaed testimony, the trial court denied defendant's motion to vacate and granted plaintiff's motion to enforce the settlement agreement.

Defendant filed a motion to vacate the judgment entered on August 20, 2001, and for a rehearing, which the trial court denied. 

The issues raised for our consideration are: (1) whether the trial court abused its discretion in denying defendant's motion to quash the subpoenas issued to its former counsel; (2) whether the circuit court abused its discretion by denying defendant's motion to conduct discovery of plaintiff's witnesses and their expected testimony, and to restrict the scope of information and documents sought in the subpoenas; and (3) whether the trial court erred when it denied defendant's motion to vacate the order entered on May 24, 2001, dismissing the case pursuant to a settlement agreement; by granting plaintiff's motion to enforce the terms of the settlement agreement, and entering judgment against defendant; and in denying defendant's motion to vacate the judgment entered August 20, 2001, and in denying defendant's motion for a rehearing
.

Defendant argues that plaintiff failed to provide copies of the subpoenas to defense counsel; that plaintiff failed to comply with Supreme Court Rule 237; and that the testimony and documents sought in the subpoenas were work product and violated defendant's attorney-client privilege.

Defendant argues that, pursuant to the Illinois Supreme Court Rules 11(b) and 104(b) (134 Ill. 2d Rs. 11(b), 104(b)), each party is required to serve all court papers on counsel for all other parties not in default and that copies of the subpoenas were never served upon defendant's attorney of record but, instead, copies were sent to defendant's counsel as a courtesy and to request guidance.

Plaintiff responds that defendant was provided with a copy of the subpoenas attached to the amended motion to enforce the terms of the settlement agreement on August 15, 2001.  In addition, on August 15
, a fax was sent to defendant by McJessy regarding the subpoenas, requesting guidance, and defendant could not have been surprised because it filed a motion to quash subpoenas two days after receiving that fax.
  

We agree with plaintiff.  The record shows that a copy of the subpoenas was filed along with plaintiff's reply in support of his motion to enforce the settlement agreement, which was served on defendant's attorney of record, Thomas Zimmerman.    Defendant concedes that it received a copy of the subpoenas when it received the amended motion to enforce the terms of the settlement agreement and responded to that fax by filing a motion to quash those subpoenas.  We fail to see how defendant can reasonably argue that it was never served when the facts demonstrate otherwise. 

Defendant argues, however, that the subpoenas failed to comply with Supreme Court Rule 237 because they were not served on McJessy and Seghetti until six days prior to the date of the subpoenas and that the rules require a seven-day notice and an affidavit attesting to the witness fee and mileage, which these subpoenas lacked.

We find no merit to these arguments.  The day before the parties' oral argument, the court received a supplemental record on appeal which indicated that the subpoenas were date-stamped by the clerk of the circuit court of Cook County on August 13, 2001, seven days before the date to appear, and served upon the witnesses on August 14, 2001, six days before they were required to appear.  Furthermore, contrary to defendant's assertions, the record supports the fact that the subpoenas contained an attestation of witness fees and mileage.  Additionally, neither McJessy nor Seghetti, the subpoenaed parties, objected to being served, and they attended the hearing on August 20
.  Rule 237(a) states that "[a]ny 
witness
 shall respond to any lawful subpoena" (emphasis added) (166 Ill. 2d R. 237(a)), which they did.   Therefore, defendant's argument must fail.

Defendant next argues that its motion to quash should have been granted because the testimony and documents sought in the subpoenas were work product and violated the attorney-client privilege.

In defining the attorney-client privilege, this court has stated that where legal advice of any kind is sought from a professional legal advisor in his capacity as such, the communications relating to that purpose, made in confidence by the client, are protected from disclosure by himself or the legal adviser.  
In re Himmel
, 125 Ill. 2d 531, 541, 533 N.E.2d 790 (1988).  " 'The purpose of the attorney-client privilege is to encourage and promote full and frank consultation between a client and legal advisor by removing the fear of compelled disclosure of information.' "  
Waste Management, Inc. v. International Surplus Lines Insurance Co.
, 144 Ill. 2d 178, 190, 579 N.E.2d 322 (1991), quoting 
Consolidation Coal Co. v. Bucyrus-Erie Co.
, 89 Ill. 2d 103, 117-18, 432 N.E.2d 250 (1982); see also 
Upjohn Co. v. United States
, 449 U.S. 383, 66 L. Ed. 2d 584
, 101 S. Ct. 677 (1981).  Moreover, "[t]he [attorney-client] privilege
 recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client."  
Upjohn
, 449 U.S. at 389, 66 L. Ed. 2d at 591, 101 S. Ct. at 682
.

Rule 201(b)(2) sets the parameters for the scope of discovery of work-product materials.   It provides, in pertinent part: "(2) *** Work Product.  *** Material prepared by or for a party in preparation for trial is subject to discovery only if it does not contain or disclose the theories, mental impressions, or
  litigation plans of the party's attorney."  166 Ill. 2d R. 201(b)(2).

The work-product doctrine provides a broader protection than the attorney-client privilege and is designed to protect the right of an attorney to thoroughly prepare his case and to preclude a less diligent adversary attorney from taking undue advantage of the former's efforts.  See 
Hickman v. Taylor
, 329 U.S. 495, 91 L. Ed. 451, 67 S. Ct. 385
 (1947).

In Illinois, however, both the attorney-client privilege and the work-product privilege (see 134 Ill. 2d R. 201(b)(2)) may be waived as to a communication put "at issue" by a party who is a holder of the privilege.  See 
Waste Management
, 144 Ill. 2d at 199-200.  Thus, when a client sues his attorney for malpractice, or when a lawyer sues his client for payment of fees, waiver is applicable to earlier communications between the now-adversarial parties.  
In re Marriage of Bielawski
, 328 Ill. App. 3d 243, 254, 764 N.E.2d 1254 (2002); see also 
SPSS, Inc. v. Carnahan-Walsh
, 267 Ill. App. 3d 586, 592, 641 N.E.2d 984 (1994) (legal malpractice claim).

In this case, the core of the instant litigation is premised upon defendant's complaint that its former attorneys were not authorized to settle the case on its behalf.  Therefore, defendant has placed the conduct of its former counsel at issue, and waiver is applicable to those earlier communications between it and its former counsel involving the settlement agreement, and the trial court did not abuse its discretion by allowing those communications to be disclosed.  In fact, the court specifically stated that it would limit the testimony of the subpoenaed attorneys "as narrowly as we can 
to the specific issue regarding the circumstances 
surrounding the actual settlement agreement."
    We find that the trial court did not abuse its discretion.

Defendant next argues that the circuit court abused its discretion by denying its motion to conduct discovery of plaintiff's witnesses and their testimony and to restrict the scope of the information and documents sought in the subpoenas.  

Supreme Court Rule 201(b)(1), which relates to pretrial discovery, allows a party to obtain by discovery full disclosure regarding any relevant matter, even where the discovery "relates to the claim or defense of the party seeking disclosure."  134 Ill. 2d R. 201(b)(1).  The scope of discovery is limited to "any matter relevant to the subject matter involved in the pending action."  134 Ill. 2d R. 201(b)(1).  
A discovery request may properly be quashed where the trial court has before it sufficient information upon which to decide defendant's motion to dismiss.  
Continental Grain Co. v. FMC Corp.
, 27 Ill. App. 3d 819, 327 N.E.2d 371 (1975);  
Evers v. Edward Hospital Ass'n
, 247 Ill. App. 3d 717, 734-35, 617 N.E.2d 1211 (1993) (trial court could limit discovery to what it viewed as primary issue on motion to dismiss);  
Heerey v. Berke
, 179 Ill. App. 3d 927, 941-42, 534 N.E.2d 1277 (1989).

The trial court has broad discretion in ruling on discovery matters.  
Willing v. St. Joseph
 
Hospital
, 176 Ill. App. 3d 737, 744, 531 N.E.2d 824 (1988).  Absent a manifest abuse of its discretion, affirmatively and clearly shown, the trial court's order concerning discovery shall not be disturbed on appeal.  
Willing
, 176 Ill. App. 3d at 744-45, 531 N.E.2d at 829.  The burden is on the appellant to affirmatively show an abuse of discretion.  
Bradfield v. Illinois Central Gulf R.R.
, 137 Ill. App. 3d 19, 24, 484 N.E.2d 365 (1985).

Illinois has been exceedingly silent, however, on whether post-trial discovery is allowed.  Several cases have taken a cursory look at the issue, but have declined to reach a final determination
 on whether a party is specifically authorized to conduct discovery after a dismissal has been rendered in a case.  

In 
Gatto v. Walgreen Drug Co.
, 61 Ill. 2d 513, 337 N.E.2d 23 (1975), 
cert. denied
 425 U.S. 936, 48 L. Ed. 2d 178, 96 S. Ct. 1669 (1976),
 the supreme court held 
sub silentio
 that discovery may be used in a post-judgment setting.  In 
Gatto
, the third-party defendant filed a motion for discovery and for reduction of a judgment on a jury verdict.  The motion for discovery was granted on the issue of whether there was a settlement agreement between plaintiff and defendant.  The discovery process revealed the existence of a fraudulently concealed settlement agreement.  The trial court, however, denied the petition to vacate, and this court affirmed.  The supreme court reversed, finding that the third-party defendant was entitled to relief 
from the judgment against it because the settlement agreement eliminated controversy between plaintiff and defendant and, thus, any third-party claim.  The court referred to the fact that discovery was allowed, revealing the document which ultimately was the key in the court's decision, but the court did not address the question of the appropriateness of the use of post-judgment discovery proceedings.  

Other Illinois cases have acknowledged the questions raised by post-trial discovery but have not squarely addressed the issue.

In 
Hanson v. Hanson
, 44 Ill. App. 3d 889, 891, 358 N.E.2d 967 (1977), the Third District was faced with the issue of whether discovery should have been allowed after trial but prior to a hearing on counterdefendant's petition to vacate.  Acknowledging that "[n]o cases on this point were cited to us and our study uncovered none," the court ruled that the material sought to be discovered was irrelevant.  
Hanson
, 44 Ill. App. 3d at 893
.

In 
Darrough v. White Motor Co.
, 74 Ill. App. 3d 560, 393 N.E.2d 122 (1979), the Fourth District declined to decide the post-trial discovery issue because insufficient surprise was alleged to validate the request for a new trial based on newly discovered evidence.
  In 
Midwest Bank & Trust Co.
 
v. Village of Lakewood
, 113 Ill. App. 3d 962, 447 N.E.2d 1358 (1983), the Second District noted that post-trial discovery 
is an open question, but the possible inability of plaintiffs to conduct post-trial discovery after their case was dismissed constituted sufficient prejudice to reverse the dismissal order.  The Second District did note, however, that although the rules are silent regarding the 
authority permitting post-dismissal discovery, "neither is there authority denying use of discovery after dismissal."  
Midwest Bank & Trust Co.
, 113 Ill. App. 3d at 972-73.  Declining to address the question, the issue of the permissibility of
 post-dismissal use of discovery remained an "open question."  
Midwest Bank & Trust Co.
, 113 Ill. App. 3d at 973. 
 See also 
Twaddle v. Litchfield
, 115 Ill. App. 3d 191, 195, 450 N.E.2d 1 (1983) (the Third District declined to address the issue of statutory authority to conduct post-trial discovery).

Illinois has addressed the issue of post-dismissal discovery in relation to relief granted pursuant to section 2-1401 of the Illinois Code of Civil Procedure (735 ILCS 5/2-1401 (West 2000).

In 
People v. B.R. MacKay & Sons, Inc.
, 141 Ill. App. 3d 137, 490 N.E.2d 74 (1986), this district held that the State had a right to conduct limited discovery proceedings in connection with its petition to vacate a judgment where the State made a 
prima facie
 showing that the judgment was obtained by fraud.  In 
MacKay
, the State filed a complaint for injunctive relief against defendant for alleged violations of environmental protection laws.  
MacKay
, 141 Ill. App. 3d at 138
.  The defendant filed a motion to dismiss for lack of personal jurisdiction asserting that it did not conduct business in Illinois, which was supported by affidavit.    
MacKay
, 141 Ill. App. 3d at 138
.
  The parties subsequently entered into a settlement agreement and the case was dismissed.  
MacKay
, 141 Ill. App. 3d at 139
.  The State subsequently obtained information that the affidavit of the defendant was false, and filed a motion to vacate the dismissal order.  The State requested discovery under section 2-1401, to have defendant produce documents related to this issue, which was granted by the trial court.  
MacKay
, 141 Ill. App. 3d at 139
.
  However, defendant refused to comply, arguing that discovery was not authorized under section 2-1401, and was sanctioned by the trial court for failure to comply.  Defendant subsequently appealed from the sanction.

Finding support in 
Gatto
, the appellate court held that "the unusual facts present here, establishing a 
prima facie
 case for fraud, permit limited discovery in relation to the [section] 2-1401 petition."  
MacKay
, 141 Ill. App. 3d at 140
.
  The court ruled that under the circumstances of that case, the trial court properly ordered respondent to comply with post-judgment discovery.  
McKay
, 141 Ill. App. 3d at 142
.

A review of cases from other jurisdictions reveals that the trial court is reluctant to exercise its discretion in allowing post-dismissal/post-judgment discovery unless there is some newly discovered evidence compelling it to do so.  In most cases, the courts have reviewed this issue in relation to a motion for new trial.  See 
Tazewell Oil Co. v. United Virginia Bank/Crestar
 
Bank
, 
243 Va. 94, 413 S.E.2d 611 (1992) (trial court did not abuse its discretion in refusing nonsettling defendant posttrial discovery of basis of plaintiff's settlements with other defendants, as nonsettling defendant was furnished with copy of settlement agreements, received answers to post-trial interrogatories filed regarding settlement negotiations, and did not indicate what additional evidence it expected to obtain in further discovery on issue of good faith that it could not have obtained in trial);  
Grillo v. Burke's Paint Co.
, 
275 Or. 421, 551 P.2d 449 (1976) (where one of two defendants knew that other defendant had advanced $5,000 to the plaintiff and where first defendant had been repeatedly advised that the second defendant intended to settle with plaintiff, first defendant should have inquired, during pretrial discovery, as to whether the proposed settlement had been accomplished so that existence of Mary Carter agreement between second defendant and plaintiff could, with due diligence, have been discovered before trial and its posttrial discovery did not entitle first defendant to a new trial on the basis of newly discovered evidence); 
Howard v. Howard
, No. L-83-257 (6th Dist. Ohio App.) (1984) (the record disclosed that appellant sought to obtain evidence, by means of posttrial discovery, which could have been, and in some cases was, obtained at the time of the trial);  
Ryan v. United States Lines Co.
, 303 F.2d 430 (2d Cir. 1962) (worker denied new trial to seek greater damages when examination ten months after trial revealed increased disability);  
Prostrollo v. University of South Dakota
, 63 F.R.D. 9 (D.S.D. 1974) (in an action by university students to challenge regulation requiring freshman and sophomore students to live on campus, court of appeals held that evidence indicating that on campus students performed better academically than off campus students did not constitute "newly discovered evidence" that would warrant relieving university from final judgment against it where the same statistics were available for prior semesters and could have been compiled and introduced after the time of trial);  
Anthony v. Earnest
, 443 So. 2d 1256 (Ala. Civ. App. 1983) (after award of damages for defendant's failure to provide water supply to property, it was error to vacate judgment on grounds that after trial the water authority had completed a line to plaintiff's property);  
Patrick v. Sedwick
, 413 P.2d 169 (Alaska 1966) (post-trial discovery of new technique to treat plaintiff's condition was not allowed on motion for a new trial);  
Wagner v. Loup River Public Power District
, 150 Neb. 7, 12, 33 N.W.2d 300, 303-04 (1948) (supreme court of Nebraska held that where plaintiff sought damages to riparian land on theory that diversion of water from river destroyed benefits previously received by sub-irrigation but defendants testified that condition showed improving water levels in plaintiff's land which would continue with good rainfalls; evidence that more than one year after trial no such improvement had come about was not "newly discovered evidence" authorizing a new trial);  
In re Disconnection of Certain Territory from Highland City
, 668 P.2d 544 (Utah 1983) (supreme court of Utah held that trial court did not abuse its discretion in refusing to grant new trial or reopen and amend its judgment on basis of "newly discovered evidence" that city had annexed property adjacent to land disconnected from city subsequent to the entry of decision of disconnection)
.

In all of the foregoing cases, the courts did not allow discovery in cases where the evidence could have been discovered prior to judgment or dismissal.  Although these cases are analyzed under the auspices of whether a new trial should have been granted, they are in agreement that post-trial discovery should only be allowed in limited circumstances.  In accordance with the Illinois Supreme Court's reasoning in 
Gatto
 and the Illinois Appellate Court's reasoning in 
MacKay
, discovery in Illinois post-dismissal has not been specifically denied.

Furthermore, the prevailing standard with regards to pre-trial and post-trial discovery requests both in Illinois and other jurisdictions is that the trial court has the discretionary power to grant or deny such requests.  See 
Willing
, 176 Ill. App. 3d at 744, 531 N.E.2d at 829 (
the trial court has broad discretion in ruling on discovery matters).

Based upon the foregoing, we find that limited post-dismissal/post-trial discovery is allowed, within the trial court's sound discretion.  However, we cannot say that the trial court abused its discretion in denying defendant's post-dismissal discovery request
 in the case at bar.

The discovery defendant wished to conduct essentially had
 already been conducted during the hearing on plaintiff's discovery subpoenas.  In its motion to quash, defendant alternatively requested discovery depositions from McJessy and Seghetti.  At the hearing, defendant had the opportunity to cross-examine both of these attorneys and review all of their supporting documentation.  Additionally, although Aaron Cohen was aware that the settlement agreement had been signed by Seghetti that same day or shortly thereafter, defendant did not attempt to vacate the judgment until 2½ months later when plaintiff sought to enforce the agreement.

Based upon the facts contained in this record, we find no abuse of discretion in the trial court's denial of defendant's request for post-dismissal discovery.

Defendant next argues that its motions to vacate on May 24, 2001 and August 20, 2001, should have been granted because the attorneys did not have express authority to settle on its behalf and that the trial court's ruling in denying its motion to vacate the settlement was an abuse of discretion.

The authority of an attorney to represent a client in litigation is separate from and does not involve the authority to compromise or settle the lawsuit.  An attorney who represents a client in litigation has no authority to compromise, consent to a judgment against the client, or give up or waive any right of the client.  See 
Kazale v. Kar- Lee Flowers
, 185 Ill. App. 3d 224, 227,  541 N.E.2d 219 (1989);  
Knisley v. City of Jacksonville
, 147 Ill. App. 3d 116, 120, 497 N.E.2d 883 (1986);  
County of Cook v. Patka
, 85 Ill. App. 3d 5, 11, 405 N.E.2d 1376 (1980).
  Rather, the attorney must receive the client's express authorization to do so.  
Danziger v. Pittsfield Shoe Co.
, 204 Ill. 145, 149-50, 68 N.E. 534 (1903); see also 
Colvin v. Hobart Brothers
, 156 Ill. 2d 166, 176-77,  620 N.E.2d 375 (1993) (Harrison, J., dissenting).

Where a settlement is made out of court and is not made a part of the judgment, the client will not be bound by the agreement without proof of express authority.  Under those circumstances, authority will not be presumed and the burden of proof rests on the party alleging authority to show that fact.  
Danziger
, 204 Ill. at 149.  Further, in such a case, opposing counsel is put on notice to ascertain the attorney's authority.  If opposing counsel fails to make inquiry or to demand proof of the attorney's authority, 
opposing counsel deals with the attorney at his or her peril.  
McClintock v. Helberg
, 168 Ill. 384, 392, 48 N.E. 145 (1897).

However, the existence of the attorney of record's authority to settle in open court is presumed unless rebutted by affirmative evidence that authority is lacking.  
Szymkowski v. Szymkowski
, 104 Ill. App. 3d 630, 633, 432 N.E.2d 1209 (1982); see also 
Brewer v. National R.R. Passenger Corp
., 165 Ill. 2d 100, 106, 649 N.E.2d 1331, 1334 (1995).  
Where a party silently stands by and permits his attorney to act in his behalf in dealing with another in a situation where the attorney may be presumed to have authority, the party is estopped from denying the agent's apparent authority as to third persons.  
Szymkowski
, 104 Ill. App. 3d at 633.

The burden of proof rests upon plaintiff to show that there was authority to settle.  In the instant case, the settlement agreement was entered into in open court, and the authority to settle is presumed unless defendant rebuts this presumption by affirmative evidence that such authority was lacking.  See 
Szymkowski
, 104 Ill. App. 3d at 633.  All parties attested to the fact that settlement negotiations between the parties had been ongoing for several years until a settlement was finally reached.   It is undisputed that McJessy and Seghetti, as defendant's attorneys, had the authority to negotiate a settlement on behalf of defendant.  The issue is whether they had the authority when the case was ultimately settled.  The trial court had been following the ongoing negotiations between the parties and was in a superior position to weigh the evidence before it when defendant sought to vacate the settlement agreement.  The attorneys testified that Charles Cohen gave them the express authority to settle the case prior to the arbitration hearing.  In addition, we must reiterate that defendant inexplicably waited 2½ months after the settlement agreement was entered to contest its validity, although the facts show that it was made aware of that agreement immediately after it had been signed in court by its attorney of record.

Therefore, because defendant failed to rebut the presumption that its attorneys had authority to settle the case on its behalf,  we find that the trial court did not abuse its discretion in denying defendant's motion to vacate.

Defendant further argues that there was no meeting of the minds with respect to the terms of the settlement agreement.  However, we repeat, it is defendant's burden to rebut the presumption that the contract terms were not agreed to, and that burden has not been met.

Based upon the foregoing analysis, the judgment of the circuit court is affirmed.

Affirmed.

HOFFMAN and HALL, JJ., concur.