SECOND DIVISION
February 27, 2007

Nos. 1-05-1932, 1-05-1933, 1-05-1934, 1-05-1935, 1-05-1936, 1-05-1937, 1-05-1938, 1-05-1939, 1-05-1940, 1-05-1941, 1-05-1942, 1-05-1943, 1-05-1944, 1-05-1945, 1-05-1946, 1-05-1947, 1-05-1948, 1-05-1955, 1-05-1956, 1-05-1957, 1-05-1958, 1-05-1959, 1-05-1960, 1-05-1961, 1-05-1962, 1-05-1963, 1-05-1964, and 1-05-2012, Consolidated.

| | |
|---|---|
| SHERYL KULCHAWIK; MARY DAVIS, Special Administrator of the Estate of Harold Davis, Deceased; ROBERT BUHS; PAUL MAHAFFEY; WILLIAM K. KESSLER, Special Administrator of the Estate of WILLIAM M. KESSLER, Deceased; MARION GERDES, Special Administrator of the Estate of WAYNE GERDES, Deceased; ELAINE MCLAUGHLIN, Special Administrator of the Estate of ROBERT MCLAUGHLIN, Deceased; ROBERT FRANKENBACH, Special Administrator of the Estate of JOHN FRANKENBACH, Deceased; ANTHONY LEAZZO; BERNICE E. RODGERS, Special Administrator of the Estate of ELWYN RODGERS, Deceased; SARAH MAXIE, Special Administrator of the Estate of KENNETH MAXIE, Deceased; LILA MORRIS, Special Administrator of the Estate of THOMAS MORRIS, Deceased; MICHAEL BOATMAN, Executor for the Estate of RAYMOND KNARIAN, Deceased; KENNETH SARICH, Special Administrator of the Estate of MARLENE SARICH, Deceased; CAROL CONNOLLY, Special Administrator of the Estate of PATRICK CONNOLLY, Deceased; ROBERT FRANKENBACH, Special Administrator of the Estate of SHIRLEY FRANKENBACH, Deceased; DONNA BARGAS, Special Administrator of the Estate of RAYMOND BARGAS, Deceased; MARY BAKER and DEVON FAULKNER, Co-Personal Representatives of the Estate of ALMETA FAULKNER, Deceased; AGNES ROBINSON, Special Administrator of the Estate of JACK ROBINSON, Deceased; RITA WERNER, Special | Appeal from the Circuit Court of Cook County. |

Administrator of the Estate of )
LARRY WERNER, Deceased; STANLEY )
MARCINKOWSKI, III, Special )
Administrator of the Estate of )
STANLEY MARCINKOWSKI, Deceased; )
GERARDINA MANZI, Special )
Administrator of the Estate of )
ANTONIO MANZI, Deceased; GERALD )
LORENTZE, Special Administrator )
of the Estate of NANCY LORENTZEN, )
Deceased; MARY A. LANGNER, )
Special Administrator of the )
Estate of RUSSELL LANGNER, )
Deceased; IRENE PABIAN-KOLBUS, )
Special Administrator of the )
Estate of RICHARD KOLBUS, )
Deceased; LINDA BARISAS, )
Executor of the Estate of ROBERT )
BARISAS, Deceased; DON SCOTT; )
SUZANNE MCDONOUGH, Special )
Administrator of the Estate of )
THOMAS MCDONOUGH, Deceased, )
                                  )
       Plaintiffs-Appellees,      )
                                  )
          v.                      )
                                  )
DURABLA MANUFACTURING COMPANY,    )      Honorable
                                  )      William D. Maddux,
       Defendant-Appellant.       )      Judge Presiding.


PRESIDING JUSTICE WOLFSON delivered the opinion of the court:

At issue is a purported settlement agreement between a group of plaintiffs involved in asbestos litigation and the defendant, Durabla Manufacturing Company (Durabla). Durabla says the agreement is invalid because its counsel lacked the authority to enter into the settlement absent Durabla's express permission. We affirm the trial court's orders finding an enforceable

agreement existed between the parties.

FACTS

Durabla, an asbestos manufacturer, was named in several hundred asbestos personal injury lawsuits in Cook County. In most of the Cook County cases, the plaintiffs were represented by the law firm of Cooney and Conway. On April 23, 2003, Robert Meyer, counsel for Durabla, wrote a letter to William Fahey, a partner at Cooney and Conway, confirming a settlement agreement resolving claims between Durabla and "all pending and future Cooney and Conway cases involving Durabla." Meyer was subsequently dismissed as Durabla's counsel in Illinois.

The April 23, 2003, letter specified the amounts of the settlements, which varied depending on the individual plaintiff's diagnosis. The letter noted Durabla would pay the appropriate settlement amount "in all cases in which product exposure is demonstrated by affidavit, and/or interrogatory answers." Durabla agreed to pay the appropriate amount "within 90 days of receipt of the affidavit and/or interrogatory answers and a medical report or medical record showing the appropriate diagnosis." Upon payment, Cooney and Conway was required to provide a full release and a stipulation for dismissal with

3

1-05-1932, 1-05-1933, 1-05-1934, 1-05-1935, 1-05-1936, 1-05-1937, 1-05-1938, 1-05-1939, 1-05-1940, 1-05-1941, 1-05-1942, 1-05-1943, 1-05-1944, 1-05-1945, 1-05-1946, 1-05-1947, 1-05-1948, 1-05-1955, 1-05-1956, 1-05-1957, 1-05-1958, 1-05-1959, 1-05-1960, 1-05-1961, 1-05-1962, 1-05-1963, 1-05-1964, and 1-05-2012, Cons.

prejudice.

Between April 2003 and January 2005, Durabla settled and paid 128 claims under the process outlined in the settlement letter. Following a discussion between Cooney and Conway and Durabla's current attorney, the settlement agreement was terminated on February 8, 2005. The attorneys agreed any case filed on or before February 7, 2005, was subject to the prior agreement. The record contains a copy of an email dated February 8, 2005, from Cooney and Conway to Durabla's current attorney. It states, in part:

> "i want to thank dave and you for taking the time to meet today. i want to memorialize our discussions as i understand them. as of feb. 8, 2005 durabla has terminated its settlement agreement with cooney and conway clients*** any case filed on or before feb. 7, 2005 will be subject to the prior agreement***"

The authenticity of the email has not been challenged. Durabla's attorney did not challenge any of the statements made in the email until Mach 5, 2005.

4

1-05-1932, 1-05-1933, 1-05-1934, 1-05-1935, 1-05-1936, 1-05-1937, 1-05-1938, 1-05-1939, 1-05-1940, 1-05-1941, 1-05-1942, 1-05-1943, 1-05-1944, 1-05-1945, 1-05-1946, 1-05-1947, 1-05-1948, 1-05-1955, 1-05-1956, 1-05-1957, 1-05-1958, 1-05-1959, 1-05-1960, 1-05-1961, 1-05-1962, 1-05-1963, 1-05-1964, and 1-05-2012, Cons.

On January 25, 2005, 39 plaintiffs brought motions to compel payment of settlement funds. The record shows ten of the plaintiffs' claims were moot because they were settled and stipulations for dismissal entered. The stipulations were signed by Durabla's current counsel.

In their motion to compel, the plaintiffs contended that, pursuant to the settlement agreement, they had returned to Durabla properly executed releases three to five months earlier. Durabla had not released the settlement funds. The 28 claims at issue were filed prior to the February 7, 2005, cut-off.

On February 23, 2005, Durabla filed a response to plaintiff's motion to compel settlement. In its response, Durabla said:

> "A settlement agreement was entered into between Plaintiffs' counsel and then counsel for Durabla Manufacturing Company on April 23, 2003. Pursuant to this agreement, Durabla Manufacturing Company agreed to pay certain sums upon receipt of proof of exposure to Durabla products through an affidavit or interrogatory answers and a

5

1-05-1932, 1-05-1933, 1-05-1934, 1-05-1935, 1-05-1936, 1-05-1937, 1-05-1938, 1-05-1939, 1-05-1940, 1-05-1941, 1-05-1942, 1-05-1943, 1-05-1944, 1-05-1945, 1-05-1946, 1-05-1947, 1-05-1948, 1-05-1955, 1-05-1956, 1-05-1957, 1-05-1958, 1-05-1959, 1-05-1960, 1-05-1961, 1-05-1962, 1-05-1963, 1-05-1964, and 1-05-2012, Cons.

> medical report or record showing the
>
> appropriate diagnosis."

Durabla contended plaintiffs' compliance with the product identification requirement of the settlement was "woefully insufficient." Durabla did not contend Durabla's prior counsel entered into the settlement agreement without authorization.[1]

In their reply to Durabla's response, plaintiffs attached Exhibit B showing that Durabla sent releases to 128 plaintiffs. Those 128 plaintiffs returned the releases to Durabla, and were issued settlement checks by the insurance company. That exhibit has not been challenged by Durabla.

On March 5, 2005, Durabla filed a supplemental response to plaintiffs' motion to compel. In its supplemental response, Durabla argued for the first time that the settlement agreement

---

[1]We note that Durabla's brief omits this and other facts unfavorable to its position. Rule 341(e)(6) requires the appellant's Statement of Facts to contain "the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment." Official Reports Advance Sheet No. 21 (October 17, 2001), R. 341(e)(6), eff. Oct. 1, 2001. The defendant's statement of facts fails to contain the facts necessary to an understanding of the issues raised. It is not the duty of this court to determine what the real issues are, nor to seek material for the disposition of such issues. Fogel v. Hodes, 68 Ill. App. 3d 594, 600, 386 N.E.2d 389 (1979).

6

1-05-1932, 1-05-1933, 1-05-1934, 1-05-1935, 1-05-1936, 1-05-1937,
1-05-1938, 1-05-1939, 1-05-1940, 1-05-1941, 1-05-1942, 1-05-1943,
1-05-1944, 1-05-1945, 1-05-1946, 1-05-1947, 1-05-1948, 1-05-1955,
1-05-1956, 1-05-1957, 1-05-1958, 1-05-1959, 1-05-1960, 1-05-1961,
1-05-1962, 1-05-1963, 1-05-1964, and 1-05-2012, Cons.

was not enforceable because "it was made without express authority of the client." Durabla also argued that even if an enforceable agreement existed, the plaintiffs had failed to abide by the conditions set forth in the letter. Durabla attached an affidavit from David Moser, Durabla's president, in support of the supplemental response. The supplemental response did not withdraw or challenge any of the statements contained in the February 23, 2005, response.

Following a hearing, the circuit court held an enforceable settlement agreement existed between the plaintiffs and Durabla from April 23, 2003, through February 7, 2005. The circuit court set the matter for further hearings and directed the parties to engage in a 201(k) conference regarding which cases were encompassed by the settlement.

On April 30, 2005, Durabla filed a motion to reconsider the trial court's order. During a hearing on May 11, 2005, Moser testified that he was personally involved in any settlements greater than five figures. Moser said he never approved a settlement with Cooney and Conway. Moser had no knowledge regarding whether his insurance carrier approved the settlement. When asked whether he had a copy of any insurance policy giving

7

him permission to dictate to the insurance company whether or not he approved of the settlement, Moser stated: "I don't believe I ever had the authority to dictate to the insurance company anything that wasn't consistent with what the policy calls for ***." There is no evidence in the record which indicates Moser had veto power over the insurance company's settlement decisions. Moser said he first became aware of the automatic settlement process in September 2004. Moser then issued an instruction to stop paying claims because Durabla was paying money on claims that had no merit.

Meyer testified at the hearing that he never had a conversation with Moser. Meyer admitted he drafted the April 23, 2003, settlement letter.

On May 13, 2005, in 28 separate orders, the circuit court ordered Durabla to pay the relevant settlement amount for each of the plaintiffs. Durabla appeals.

DECISION

I. Validity of Settlement Agreement

Durabla contends it never agreed to the settlement agreement because Meyer lacked the authority to compromise or settle the 28 claims at issue.

8

1-05-1932, 1-05-1933, 1-05-1934, 1-05-1935, 1-05-1936, 1-05-1937, 1-05-1938, 1-05-1939, 1-05-1940, 1-05-1941, 1-05-1942, 1-05-1943, 1-05-1944, 1-05-1945, 1-05-1946, 1-05-1947, 1-05-1948, 1-05-1955, 1-05-1956, 1-05-1957, 1-05-1958, 1-05-1959, 1-05-1960, 1-05-1961, 1-05-1962, 1-05-1963, 1-05-1964, and 1-05-2012, Cons.

Because the trial court held an evidentiary hearing tantamount to a trial to decide the factual issues in this case, we review the issues under the deferential manifest weight of the evidence standard. Salazar v. Board of Education of Mannheim School District 83, Cook County, Illinois, 292 Ill. App. 3d 607, 613, 686 N.E.2d 650 (1997). The court's determination regarding the validity of the settlement agreement is against the manifest weight of the evidence where "an opposite conclusion is clearly apparent or the fact-finder's finding is palpably erroneous and wholly unwarranted." Salazar, 292 Ill. App. 3d at 613.

An attorney who represents a client in litigation has no authority to settle a claim of the client absent the client's express authorization to do so. Shapo v. Tires 'N Tracks, Inc., 336 Ill. App. 3d 387, 399, 782 N.E.2d 813 (2002). Where a settlement is made out of court and not made part of the judgment, the client will not be bound by the agreement without proof of express authority. Shapo, 336 Ill. App. 3d at 399. The party alleging authority has the burden of proving that fact. Shapo, 336 Ill. App. 3d at 399. The plaintiffs point to no evidence that Moser expressly authorized Meyer to settle the lawsuits on behalf of Durabla. Meyer had been retained by

9

1-05-1932, 1-05-1933, 1-05-1934, 1-05-1935, 1-05-1936, 1-05-1937,
1-05-1938, 1-05-1939, 1-05-1940, 1-05-1941, 1-05-1942, 1-05-1943,
1-05-1944, 1-05-1945, 1-05-1946, 1-05-1947, 1-05-1948, 1-05-1955,
1-05-1956, 1-05-1957, 1-05-1958, 1-05-1959, 1-05-1960, 1-05-1961,
1-05-1962, 1-05-1963, 1-05-1964, and 1-05-2012, Cons.

Durabla's insurance company.

Durabla's first response, filed February 23, 2005, and signed by Durabla's current counsel, makes three claims: first, specific product identification is lacking; second, plaintiffs did not prove Durabla's product was a proximate cause of their injuries; and third, plaintiffs provided no evidence they were exposed to Durabla's product.

It is clear to us the only purpose of the first response was to establish the reasons why payments could not be compelled under the settlement agreement. There is not the slightest hint in the response that Durabla believed the settlement agreement is invalid or unauthorized. In fact, in paragraph 20 of the February 23, 2005, response, Durabla says: "Since Plaintiffs have provided no meaningful product identification sufficient to trigger Durabla's obligation under the letter agreement, Plaintiffs' motion to compel *** must be denied***" (Emphasis added.) Meyer's authority to enter into the settlement agreement was unquestioned. Moser testified that he was personally involved in any settlements greater than five figures. None of the settlements at issue is greater than five figures.

Moser admits he learned about the agreement in September or

10

1-05-1932, 1-05-1933, 1-05-1934, 1-05-1935, 1-05-1936, 1-05-1937, 1-05-1938, 1-05-1939, 1-05-1940, 1-05-1941, 1-05-1942, 1-05-1943, 1-05-1944, 1-05-1945, 1-05-1946, 1-05-1947, 1-05-1948, 1-05-1955, 1-05-1956, 1-05-1957, 1-05-1958, 1-05-1959, 1-05-1960, 1-05-1961, 1-05-1962, 1-05-1963, 1-05-1964, and 1-05-2012, Cons.

October of 2004. Nothing in this record suggests he or his current attorney challenged the authenticity of the agreement before the March 5, 2005, supplemental response was filed--a period of about five or six months. Nor is there any indication Moser or his current attorney challenged the February 8, 2005, email from Cooney and Conway before the supplemental response was filed. In fact, the supplemental response, in its Conclusion, adopts the reasons "set forth in defendant's original response."

When an admission is made in an unverified pleading signed by an attorney, it is binding on his client unless the pleading is amended. On amendment, the admission becomes evidentiary, not judicial. Knauerhaze v. Nelson, 361 Ill. App. 3d 538, 558, 836 N.E.2d 640 (2005); State Security Ins. Co. v. Linton, 67 Ill. App. 3d 480, 484, 384 N.E.2d 718 (1979). The February 23, 2005, response was not amended.

Whether the repeated admissions in the first response concerning existence of the settlement agreement are evidentiary or judicial, they support the trial court's factual finding that there was an enforceable, authorized agreement in this case.

II. Ratification

Even if Meyer had exceeded his authority by entering into

11

1-05-1932, 1-05-1933, 1-05-1934, 1-05-1935, 1-05-1936, 1-05-1937, 1-05-1938, 1-05-1939, 1-05-1940, 1-05-1941, 1-05-1942, 1-05-1943, 1-05-1944, 1-05-1945, 1-05-1946, 1-05-1947, 1-05-1948, 1-05-1955, 1-05-1956, 1-05-1957, 1-05-1958, 1-05-1959, 1-05-1960, 1-05-1961, 1-05-1962, 1-05-1963, 1-05-1964, and 1-05-2012, Cons.

the settlement with Cooney and Conway, we would find the record reflects Durabla ratified the settlement agreement.

When an act is performed for the benefit of another by a person without authority, or by an authorized agent in excess of his authority, the person for whose benefit the act was done may ratify the act. Effingham State Bank v. Blades, 139 Ill. App. 3d 259, 262, 487 N.E.2d 431 (1985). Ratification of an unauthorized act is tantamount to an original authorization, and confirms what was originally unauthorized. Horowitz v. Holabird & Root, 212 Ill. 2d 1, 14, 516 N.E.2d 272 (2004); Jones v. Beker, 260 Ill. App. 3d 481, 485, 632 N.E.2d 273 (1994).

A client ratifies the actions of his attorney by not repudiating the acts once he has knowledge of them, or by accepting the benefits of those acts. City of Burbank v. Illinois State Labor Relations Board, 185 Ill. App. 3d 997, 1003, 541 N.E.2d 1259 (1990). "Ratification need not be express; it may be inferred from surrounding circumstances, including long-term acquiescence, after notice, to the benefits of an allegedly unauthorized transaction." Progress Printing Corp. v. Jane Byrne Political Committee, 235 Ill. App. 3d 292, 310, 601 N.E.2d 1055 (1992); Stathis v. Gelderman, Inc., 295 Ill. App. 3d 844, 858,

12

1-05-1932, 1-05-1933, 1-05-1934, 1-05-1935, 1-05-1936, 1-05-1937, 1-05-1938, 1-05-1939, 1-05-1940, 1-05-1941, 1-05-1942, 1-05-1943, 1-05-1944, 1-05-1945, 1-05-1946, 1-05-1947, 1-05-1948, 1-05-1955, 1-05-1956, 1-05-1957, 1-05-1958, 1-05-1959, 1-05-1960, 1-05-1961, 1-05-1962, 1-05-1963, 1-05-1964, and 1-05-2012, Cons.

692 N.E.2d 798 (1998).

Here, Durabla approved and its insurance company paid 128 claims under the administrative process outlined in the settlement agreement, and Durabla sent releases for the settlement of the 28 claims at issue in this case, prior to challenging Meyer's authority to enter into the settlement agreement. Moser, Durabla's president, contends Durabla first learned about the settlement in September or October 2004. The record shows, however, Durabla continued to distribute settlement funds under the terms of the agreement until January 31, 2005.

Durabla did not contend the settlement was entered into without authority until March 5, 2005, five or six months after it learned the settlement existed. Durabla's current counsel signed the February 23, 2005, response.

In light of Durabla's long-term acquiescence, after notice, to the benefits of the allegedly unauthorized settlement, we find Durabla ratified the April 23, 2003, settlement agreement. See Stathis, 295 Ill. App. 3d at 858; Progress Printing Corp., 235 Ill. App. 3d at 310.

Another agency principle stands in the way of Durabla's claim the settlement agreement was not authorized.

13

1-05-1932, 1-05-1933, 1-05-1934, 1-05-1935, 1-05-1936, 1-05-1937,
1-05-1938, 1-05-1939, 1-05-1940, 1-05-1941, 1-05-1942, 1-05-1943,
1-05-1944, 1-05-1945, 1-05-1946, 1-05-1947, 1-05-1948, 1-05-1955,
1-05-1956, 1-05-1957, 1-05-1958, 1-05-1959, 1-05-1960, 1-05-1961,
1-05-1962, 1-05-1963, 1-05-1964, and 1-05-2012, Cons.

Where a party stands by silently and lets his attorney act in his behalf in dealing with another in a situation where the attorney may be presumed to have authority, the party is estopped from denying the agent's apparent authority to a third person. Shapo, 336 Ill. App. 3d at 399. In Shapo, the defendant waited 2 and 1/2 months after the settlement agreement was entered to contest its validity. That amounted to a failure to rebut the presumption that its attorneys had authority to settle the case on its behalf. Shapo, 336 Ill. App. 3d at 400.

In the case before us, Moser waited five or six months before claiming he did not authorize the settlement agreement. While the agreement in this case was not reached in open court, the record reflects ten stipulations to dismiss were filed in the circuit court pursuant to the settlement agreement. We believe Durabla is estopped from claiming it did not authorize the agreement.

III. Invalid Claims

Durabla further contends the submission of claims under the settlement agreement "were in bad faith, because defects existed in the underlying claims, such as claims that violated the statute of limitations, claims with insufficient product

14

identification, or claims based upon improper jurisdiction." It is a naked and general contention. Durabla makes no claim in its brief that any specific plaintiff's claim is invalid. We hold Durabla has waived this argument. Pursuant to Supreme Court Rule 341(e)(7), points not argued in an appellant's brief are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing. Official Reports Advance Sheet No. 21 (October 17, 2001), R. 341(e)(7), eff. Oct. 1, 2001.

Durabla also has waived its argument that the evidentiary hearing was insufficient. Other than contending the judge's finding was incorrect, Durabla points to no deficiency in the hearing itself which would justify reversal. In fact, Durabla was invited to present any testimony it believed appropriate.

Durabla further contends the settlement agreement is not a binding contract because the elements of a contract were not met, that there was no clear meeting of the minds as to the terms of the agreement. A settlement agreement is binding where there is a clear offer and acceptance to compromise, and there is a meeting of the minds as to the terms of the agreement. <u>Knisley v. City of Jacksonville</u>, 147 Ill. App. 3d 116, 119-20, 497 N.E.2d 883 (1986). The trial court has discretion to determine whether

15

a settlement occurred, and we will not reverse its decision unless it is contrary to the manifest weight of the evidence. Kim v. Alvey, Inc., 322 Ill. App. 3d 657, 670, 749 N.E.2d 368 (2001). We find the settlement agreement is facially valid and contains all the necessary elements for a valid contract.

CONCLUSION

We affirm the trial court's orders enforcing the settlement.

Affirmed.

HOFFMAN, and HALL, JJ., concur.

16