2022 IL App (1st) 210794

No. 1-21-0794

Third Division
May 18, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| ROBERT LUKANTY, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 19 L 5873 |
| | ) | |
| MILOSZ A. MOGLINICKI; GEMINI GREEN | ) | |
| PROPERTY, LLC; CELINA MICKO; BILL | ) | The Honorable |
| MICKO, d/b/a Elite Stone, Inc.; and | ) | Moira S. Johnson, |
| STANLEY DLUBACZ, | ) | Judge Presiding. |
| | ) | |
| Defendants | ) | |
| | ) | |
| (Milosz A. Moglinicki, Gemini Green Property, | ) | |
| LLC, and Bill Micko d/b/a Elite Stone, Inc., | ) | |
| Defendants-Appellees). | ) | |

_____

PRESIDING JUSTICE GORDON delivered the judgment of the court, with
opinion.
Justices McBride and Ellis concurred in the judgment and opinion.

**OPINION**

¶ 1      In the case at bar, plaintiff, Robert Lukanty, was injured when a refrigerator that he was helping move at the behest of defendant Milosz A. Moglinicki[1] at Moglinicki's property fell, trapping plaintiff's right middle-finger against the floor. As a result of this incident, plaintiff's right middle-finger was severed. Plaintiff subsequently filed suit against defendant.[2] Plaintiff's initial complaint consisted of two counts: premises liability and negligence "(in the alternative)". About 10 months after the filing of the complaint, plaintiff's counsel purportedly entered into a global settlement agreement, settling all of his claims against Moglinicki, Gemini Green Property, LLC, and Bill Micko d/b/a Elite Stone, Inc., for $29,000. However, plaintiff refused to sign a release of his claims against those defendants, contending his counsel lacked authority to settle the lawsuit for that amount. Defendants filed an emergency motion to enforce settlement. After a hearing, the trial court granted defendants' emergency motion to enforce settlement, and plaintiff appeals. Pursuant to this court's order to supplement the record on appeal, plaintiff filed a certified agreed statement of facts on April 5, 2022. For the reasons set forth below, we reverse.

¶ 2                       I. BACKGROUND

¶ 3      As noted, plaintiff filed a two-count complaint against defendant Moglinicki. The allegations are based on an injury sustained by plaintiff on defendant's property on January 26, 2019. According to the complaint, plaintiff was hired as an independent contractor to provide

---

[1]This is the correct spelling of Milosz A. Moglinicki's first and last name. Throughout the litigation, numerous typographical errors were made regarding Moglinicki's name. Several iterations of the caption appeared in the proceedings below. Here, we use the caption as it appears on the trial court's order granting motion to enforcement settlement, which is the subject of this appeal.

[2]The complaint was later amended twice and in its most recent version included Gemini Green Property, LLC; Celina Micko; Bill Micko, d/b/a Elite Stone, Inc.; and Stanley Dlubacz as additional defendants.

flooring work at defendant's property. After plaintiff finished the flooring work, defendant requested that plaintiff help him carry a refrigerator into defendant's property. Defendant instructed another person and plaintiff to use a rolling dolly to move the refrigerator up the stairs located at the front of the property. Plaintiff alleges that defendant and the other person caused the refrigerator to abruptly be set down. As a result, the full weight of the refrigerator fell on plaintiff's right middle-finger, trapping it against the floor and severing it. Based on these allegations, plaintiff pleaded two counts against defendant Moglinicki: premises liability and negligence.

¶ 4　　　The complaint was subsequently amended twice. On January 26, 2021, plaintiff filed his second amended complaint, consisting of eight counts, to include Gemini Green Property, LLC; Celina Micko; Bill Micko, d/b/a Elite Stone, Inc.; and Stanley Dlubacz as additional defendants. Count I (premises liability) and count II (negligence) were pleaded against Moglinicki; count III (premises liability) and count IV (negligence) were pleaded against Gemini Green Property, LLC; count V (premises liability) and count VI (negligence) were pleaded against Bill Micko, d/b/a Elite Stone, Inc.; count VII (negligence) was pleaded against Celina Micko; and count VIII (negligence) was pleaded against Stanley Dlubacz.

¶ 5　　　Plaintiff retained the Tenenbaum Law Group to represent him in the above-described injury lawsuit.[3] Plaintiff is a Polish immigrant with very limited English-language capabilities, and the Tenenbaum Law Group has Polish-speaking capabilities. The attorney representation agreement dated February 28, 2019 (representation agreement), signed by plaintiff and S.

---

[3]The following account of events is taken from exhibits submitted in the course of motion practice following defendants' filing of their emergency motion to enforce settlement agreement. These exhibits included, among others, depositions of plaintiff and his Tenenbaum Law Group counsel.

Aaron Tenenbaum (Tenenbaum), sets forth the terms of representation. Of relevance to the instant appeal is paragraph 5 of the representation agreement, which reads:

> "Giving and granting unto said ATTORNEY full power and authority to do and perform all and every act and thing whatsoever including executing drafts and releases requisite and necessary to be done in and about the claim as fully, to all intents and purposes, as might or could if personally present at the doing thereof with full power of substitution and revocation, hereby ratifying and confirming all that the said ATTORNEY shall lawfully do or cause to be done by virtue hereof."

¶ 6     Victor Cordova (Cordova), an associate at the Tenenbaum Law Group, worked on plaintiff's case. Although he reported to and was supervised by Tenenbaum, the principal of Tenenbaum Law Group, Cordova handled all aspects of the case. This included negotiation discussions with defendants. On April 13, 2020, Cordova accepted a cumulative settlement offer of $29,000 from defendants Moglinicki; Gemini Green Property, LLC; and Bill Micko, d/b/a Elite Stone, Inc.

¶ 7     Shortly thereafter, plaintiff was instructed to come to the Tenenbaum Law Group's office to sign a release. On April 20, 2020, plaintiff and his wife, Teresa Lukanty, appeared at the Tenenbaum Law Group's office. In his deposition in April of the following year, plaintiff expressed dissatisfaction with the settlement amount and wanted to think it over before signing the release. Plaintiff left the office without signing the release.

¶ 8     The first communication between plaintiff and Tenenbaum Law Group after the April 20, 2020, meeting appears to be an April 25, 2020, e-mail sent on behalf of plaintiff to Tenenbaum and Cordova. The e-mail terminated the legal services of Tenenbaum Law Group. It did not provide any reason or explanation for the termination.

¶ 9          On April 29, 2020, defendants Moglinicki; Gemini Green Property, LLC; and Bill Micko, d/b/a Elite Stone, Inc., filed an emergency motion to enforce the settlement agreement. Defendants argued that, under principles of contract law, the settlement agreement is enforceable, as there was an offer, acceptance, consideration, and its terms are definite and reasonably ascertainable. Moreover, they argued, the failure to sign a release does not render the settlement agreement unenforceable, and there was no legal requirement for an evidentiary hearing in this case.

¶ 10         On May 1, 2020, plaintiff retained Glen J. Dunn & Associates, Ltd, as his legal counsel. On February 9, 2021, plaintiff filed his response to defendants' emergency motion to enforce the settlement agreement. In his response, plaintiff argued that the settlement agreement is unenforceable because he did not authorize anyone at Tenenbaum Law Group to settle his case.

¶ 11         On March 18, 2021, Tenenbaum was deposed. Tenenbaum testified that paragraph 5 of the representation agreement permits his firm to accept a settlement on behalf of a client without the client's advance approval. Tenenbaum also testified that Tomasz Czarnota (Czarnota), a Polish-speaking paralegal at Tenenbaum Law Group, translated each paragraph of the representation agreement prior to the client signing it.

¶ 12         In his deposition, Tenenbaum testified regarding a purported March 20, 2020, meeting with his now former client, the plaintiff. According to Tenenbaum, there were five people present at the March 20, 2020, meeting. These included plaintiff, plaintiff's wife, Tenenbaum, Cordova, and Czarnota. Tenenbaum testified that, at this meeting, he advised plaintiff that there was an offer to settle the lawsuit for a "total cumulative settlement" of $30,000. Tenenbaum testified that "after much discussion, it was accepted. They gave us authority to

accept it. However, they left with the statement, with the understanding that we will still maybe try to get a little more."

¶ 13    Tenenbaum also testified that his associate, Cordova, accepted a global settlement offer of $29,000 on April 13, 2020. There is no indication in Tenenbaum's testimony that the $29,000 offer was communicated to plaintiff prior to Cordova's acceptance thereof. Tenenbaum's deposition was adjourned and scheduled to resume at a later date.

¶ 14    On April 7, 2021, Tenenbaum's deposition resumed. Curiously, Tenenbaum testified that the March 20, 2020, meeting left him confident that he had the authority to accept a $25,000 cumulative settlement. This $25,000 figure did not appear in the first part of Tenenbaum's deposition that took place approximately three weeks prior thereto.

¶ 15    On April 7, 2021, Cordova was also deposed. Cordova testified that, although paragraph 5 of the representation agreement grants him authority to negotiate on behalf of his client, specific authority to accept a settlement of not less than $25,000 was obtained at the purported March 20, 2020, meeting. There is no indication of any written approval attached to any of the pleadings.

¶ 16    In his declaration and deposition, plaintiff denies that the March 20, 2020, meeting ever took place. He denies that he ever authorized anyone at Tenenbaum Law Group to settle his lawsuit.

¶ 17    On April 19, 2021, defendants filed their reply in support of their emergency motion to enforce the settlement agreement. In their reply brief, defendants argued that "plaintiff expressly authorized his counsel, both in-writing and in-peron [*sic*], to negotiate and settle his action on his behalf and without further notice." They argued that paragraph 5 of the representation agreement granted Tenenbaum Law Group "unfettered authority" to negotiate

and accept a settlement on plaintiff's behalf without consulting or notifying him first. They also argued that paragraph 5 was sufficiently translated for plaintiff and that plaintiff did not ask for any further explanation before signing the representation agreement. Defendants also argued that the purported March 20, 2020, meeting between plaintiff and his counsel authorized Tenenbaum Law Group to accept a cumulative settlement of $25,000 or more. Defendants' reply makes no mention of the $30,000 cumulative settlement offer that was—according to Tenenbaum's March 18, 2021, deposition—purportedly on the table at the March 20, 2020, meeting.[4]

¶ 18    On June 9, 2021, the trial court held a hearing regarding the defendants' emergency motion to enforce settlement. On June 10, 2021, the court issued its order granting the motion to enforce settlement. The court ordered the following:

"1. Defendants, MILOSZ A. MOGLINICKI, GEMINI GREEN PROPERTY, LLC. And BILL MICKO d/b/a EITE STONE, INC.'s Motion to Enforce Settlement is granted; and

2. Defendants, MILOSZ A. MOGLINICKI, GEMINI GREEN PROPERTY, LLC and BILL MICKO d/b/a ELITE STONE, INC., are dismissed with prejudice.

3. Pursuant to Illinois Supreme Court Rule 304(a), there is no just reason for delaying either enforcement or appeal of this Order.

4. This case is pending against the remaining Defendant."

---

[4]Plaintiff subsequently filed his sur-reply to defendants' reply, and defendants filed their sur-reply to plaintiff's sur-reply. Because neither sur-reply advanced any novel arguments, they are not discussed here.

¶ 19    There is nothing in the record to indicate that the June 9, 2021, hearing was an evidentiary hearing. There is also nothing in the record to indicate that the trial court found that the settlement agreement was reached in good faith.

¶ 20    On July 7, 2021, plaintiff filed a timely notice of appeal, and this appeal follows.

¶ 21    On March 7, 2022, this court ordered plaintiff to supplement the record with a certified verbatim transcript of the trial court's June 9, 2021, hearing by March 22, 2022. In lieu thereof, this court permitted plaintiff to submit a certified bystander's report or a certified agreed statement of facts. On April 5, 2022, plaintiff filed a certified agreed statement of facts. However, the statement does not elucidate the trial court's reasoning in reaching its decision to enforce the settlement agreement at issue. Thus, it is of little value in assisting our review of its order. According to the agreed statement of facts, "[t]he court based its decision upon the parties' briefs, the evidence presented, and the arguments of counsel received, and upon consideration of same, the Court concluded that Mr. Lukanty had, in fact, expressly authorized his prior attorneys (the Tenenbaum firm) to negotiate and accept the settlement they did." We proceed with our analysis based on the parties' briefs and the record on appeal.

¶ 22                                    II. ANALYSIS

¶ 23    On appeal, plaintiff argues that the settlement agreement at issue is unenforceable because plaintiff did not "provide The Tenenbaum Firm the distinct authority required to compromise his suit." Defendants urge us to presume that the trial court's decision to grant their motion to enforce had a sufficient legal and factual basis. Defendants also argue that the Tenenbaum Law Group had the authority to compromise plaintiff's lawsuit. For the reasons discussed below, we reverse the trial court's order enforcing the settlement agreement and dismissing the lawsuit against defendants.

¶ 24                          A. Failure to File a Complete Record

¶ 25        As a threshold matter, defendants argue that plaintiff has failed to meet his burden of providing a sufficiently complete record on appeal by failing to provide a verbatim transcript, a bystander's report, or an agreed statement of facts regarding the hearing at issue. It is well settled that the burden to provide a sufficiently complete record to support his or her claims falls on the appellant. *Xcel Supply, LLC v. Horowitz*, 2018 IL App (1st) 162986, ¶ 52. However, in the case at bar, we find that the record is sufficiently complete to conduct a review on the merits. Though we do not have before us a report of the proceedings of the hearing during which the trial court upheld the validity of the enforcement agreement at issue, we do have extensive documentation of the motion practice following defendants' motion to enforce the settlement agreement. This documentation includes not only the pleadings themselves, but also exhibits that include deposition testimony of all key people in this litigation. Additionally, the record includes copies of e-mails regarding the settlement agreement at issue and the attorney representation agreement plaintiff signed. Accordingly, we find that the record is sufficiently complete to allow us to review the issue before us.

¶ 26                             B. Standard of Review

¶ 27        Where the trial court has held an evidentiary hearing, the appellate court reviews its findings of fact under the manifest weight of the evidence standard. *Kulchawik v. Durabla Manufacturing Co.*, 371 Ill. App. 3d 964, 969 (2007). "A finding regarding the validity of a settlement agreement is against the manifest weight of the evidence only if the opposite conclusion is clearly apparent or where a decision is palpably erroneous and wholly unwarranted." *K4 Enterprises, Inc. v. Grater, Inc.*, 394 Ill. App. 3d 307, 312-13 (2009).

¶ 28    However, where the trial court's decision to grant or deny a settlement agreement is made on the motion pleadings and attachments, without holding an evidentiary hearing, the appellate court reviews the trial court's decision *de novo*. *City of Chicago v. Ramirez*, 366 Ill. App. 3d 935, 946 (2006). Further, "[a]n evidentiary hearing regarding the formation and terms of a settlement agreement may be appropriate when there is a disputed issue on that point and additional evidence or testimony is required to satisfactorily resolve the issue." *Ramirez*, 366 Ill. App. 3d at 946.

¶ 29    Thus, the applicable standard of review depends on whether the trial court held an evidentiary hearing prior to its issuance of the order at issue. As noted above, there is no indication in the record that the trial court held an evidentiary hearing prior to issuing its June 10, 2021, order granting defendants' motion to enforce the settlement agreement, nor do the parties claim that such an evidentiary hearing occurred. As also noted above, an evidentiary hearing is appropriate when there is a disputed issue on the formation and terms of a settlement agreement. Here, the record indicates several key factual issues in dispute, which could have been resolved through an evidentiary hearing. For one, Tenenbaum Law Group contends that the representation agreement plaintiff signed authorized Tenenbaum Law Group to compromise plaintiff's suit absent his advance approval. Plaintiff denies that the agreement he signed conferred such authority to his counsel. Second, Tenenbaum Law Group contends that even if the representation agreement did not confer such authority, plaintiff granted such authority during a March 20, 2020, meeting. Plaintiff denies that such a meeting even occurred. Third, there is a dispute regarding the purported settlement offer amount, as evident from the deposition of Tenenbaum himself. In the first part of his deposition, Tenenbaum testified that

there was a cumulative settlement offer of $30,000. In the second part, he testified that the amount of the cumulative settlement offer was $25,000.

¶ 30 However, because the trial court did not hold an evidentiary hearing on defendants' motion, even though there were several key disputed issues of fact related to the purported settlement agreement's formation and terms, we review the trial court's order enforcing the settlement agreement *de novo*. *De novo* consideration means we perform the same analysis that a trial judge would perform. *Condon & Cook, L.L.C. v. Mavrakis*, 2016 IL App (1st) 151923, ¶ 55.

¶ 31                                     C. Validity of the Settlement Agreement

¶ 32 The crux of the dispute in the case at bar is whether plaintiff's counsel had plaintiff's authorization to compromise his suit.[5] As noted above, defendants contend that the representation agreement plaintiff signed granted Tenenbaum Law Group the authority to compromise plaintiff's suit. Tenenbaum Law Group also contends that plaintiff granted it authority to compromise plaintiff's suit during a March 20, 2020, meeting. Plaintiff denies that the representation agreement he signed granted his counsel such authority, and he denies that the purported March 20, 2020, meeting ever took place.

¶ 33 As an initial matter, we must note that it appears that the trial court's order enforcing the settlement agreement lacks the requisite good faith finding. Where two or more persons are

[5]As noted above, defendants argue, as an initial matter, that the record on appeal is incomplete because plaintiff has failed to provide a record of the proceedings regarding the trial court's hearing on the motion to enforce the settlement agreement. Based on this, defendants urge us to therefore presume that the trial court's order granting the enforcement of the settlement had a sufficient legal and factual basis. As also noted above, this court granted plaintiff leave to supplement the record. Plaintiff failed to provide a report of the proceedings that explains the trial court's reasoning in rendering its decision. The agreed statement of facts plaintiff provided did not include the trial court's reasoning. However, we have received plaintiff's appellate brief, defendants' appellate brief, and plaintiff's reply brief. The record also includes the extensive motion practice regarding the enforcement of the settlement agreement at bar. Accordingly, we find that there is sufficient evidence in the record for us to review the trial court's decision, even in the absence of a report of proceedings or bystander's report, especially where there was no evidence presented in an evidentiary hearing.

subject to tort liability arising out of the same injury to person or property, the Joint Tortfeasor Contribution Act (Contribution Act) applies. 740 ILCS 100/2(a) (West 2018). The Contribution Act provides a right of contribution among joint tortfeasors. 740 ILCS 100/2(a) (West 2018). The settling parties carry the initial burden of making a preliminary showing of good faith. *Johnson v. United Airlines*, 203 Ill. 2d 121, 132 (2003). " 'At a minimum,' the settling parties must show the existence of a legally valid settlement agreement, although other factual evidence may be necessary before the court may make its initial determination. *Hartley v. North American Polymer Co.*, 2020 IL App (1st) 192619, ¶ 26 (quoting *Johnson*, 203 Ill. 2d at 132). Once the settling parties have shown the existence of a legally valid settlement agreement, the party challenging the good faith of the settlement must prove the absence of good faith by a preponderance of the evidence. *Johnson*, 203 Ill. 2d at 132. Our supreme court has recognized that two public policies underpin the Contribution Act: the encouragement of settlement and the equitable apportionment of damages among tortfeasors. *Antonicelli v. Rodriguez*, 2018 IL 121943, ¶ 13.

¶ 34 We turn now to the legal standard applicable in determining whether an attorney has authority to settle a client's suit. "An attorney who represents a client in litigation has no authority to settle a claim of the client absent the client's express authorization to do so." *Kulchawik*, 371 Ill. App. 3d at 969 (citing *Shapo v. Tires 'N Tracks, Inc.*, 336 Ill. App. 3d 387, 399 (2002)). " 'Where a settlement is made out of court and is not made part of the judgment, the client will not be bound by the agreement without proof of express authority.' " *Kulchawik*, 371 Ill. App. 3d at 969 (quoting *Shapo*, 336 Ill. App. 3d at 399). "The party alleging authority has the burden of proving that fact." *Kulchawik*, 371 Ill. App. 3d at 969 (citing *Shapo*, 336 Ill. App. 3d at 399).

¶ 35        In the case at bar, three defendants purportedly entered into a settlement agreement with plaintiff. However, there is no indication that these settling defendants have met their burden of making a preliminary showing of good faith, as required by the Contribution Act. Moreover, there is no indication that the trial court made a good faith finding, also required by the Contribution Act. Therefore, the trial court's order is reversible on this ground alone. However, because neither party's briefs raise this issue, we do not decide this appeal based on the lack of a good faith finding by the trial court.

¶ 36        Defendants derive the Tenenbaum Law Group's purported settlement authority from two sources: paragraph 5 of the representation agreement and the purported March 20, 2020, meeting. We address each in turn. As explained above, counsel must have express authorization from his client to settle the client's case. *Kulchawik*, 371 Ill. App. 3d at 969. However, neither the word "settle" nor any variation of it appears in paragraph 5 of the representation agreement:

> "Giving and granting unto said ATTORNEY full power and authority to do and perform all and every act and thing whatsoever including executing drafts and releases requisite and necessary to be done in and about the claim as fully, to all intents and purposes, as might or could if personally present at the doing thereof with full power of substitution and revocation, hereby ratifying and confirming all that the said ATTORNEY shall lawfully do or cause to be done by virtue hereof."

¶ 37        Therefore, by definition, there is no express authority in this agreement. Defendants have not cited a single case that suggests a lawyer can derive his settlement authority from a document that does not even mention the word "settle" or any variation of it. Indeed, allowing such agreements would implicate serious public policy concerns. Because we do not find any

authority to settle this case, we do not have to decide the public policy issues. Instead, defendants vaguely contend that "[p]laintiff freely signed the comprehensive Agreement which delineated the nature and scope the firm's representation of his interests, including the authority to resolve the controversy between the parties" without pointing to any particular language in paragraph 5 (or even in the representation agreement) that confers the purported settlement authority to plaintiff's counsel. Defendants also contend that the representation agreement gave the firm "full power and authority" to negotiate and accept the settlement offer. Though the phrase "full power and authority" does appear in paragraph 5, there is no mention that such "power and authority" includes settlement. Again, express authorization is required. Based on the foregoing, we cannot conclude that this vague and seemingly broad-reaching text of paragraph 5 granted the Tenenbaum Law Group advance authority to settle plaintiff's case for apparently any amount it saw fit. In short, paragraph 5 does not confer the Tenenbaum Law Group the authority that defendants claim it does, and defendants have failed to provide any other documentation conferring said authority.

¶ 38        Second, defendants argue that plaintiff authorized the Tenenbaum Law Group to settle his suit during a meeting that purportedly occurred on March 20, 2020, at the Tenenbaum Law Group's office. According to Tenenbaum, he met with plaintiff, plaintiff's wife, Cordova, and Czarnota on that day. Tenenbaum testified that plaintiff granted his firm authority to settle his case, though the amount that was purportedly authorized is unclear from Tenenbaum's own testimony. Plaintiff denies that this meeting occurred. Moreover, save for the testimony of Tenenbaum's associate, Cordova, defendants have failed to provide corroborating documentation to show that the meeting took place. Defendants were unable to produce any calendar entries, notes, memoranda, e-mails, or correspondence with plaintiff to indicate that

a meeting took place. Based on the foregoing, it is, at best, unclear whether this meeting occurred. If it did not occur, then no authority could have been granted. Even if the meeting did occur, the conflicting testimony of Tenenbaum calls into question the settlement amount that was presented to plaintiff. During the first part of his deposition, which took place on March 18, 2021, Tenenbaum testified that the cumulative settlement offer was $30,000 and that settlement authority was based on this amount. During the second part of his deposition, which took place on April 7, 2021, Tenenbaum testified that the cumulative settlement offer communicated to plaintiff at the meeting was $25,000. On these facts, we cannot find that the March 20, 2020, meeting, whether or not it actually took place, granted the Tenenbaum Law Group authority to settle plaintiff's case. Accordingly, as there is no evidence that settlement was authorized, we cannot find that a valid settlement agreement was ever formed. Therefore, the trial court erred in granting defendants' motion to enforce the settlement agreement.

¶ 39                                    III. CONCLUSION

¶ 40        For the reasons set forth above, the settlement agreement in the case at bar is unenforceable because the evidence presented to the trial court did not establish the Tenenbaum Law Group's authority to settle plaintiff's case on his behalf.

¶ 41        Reversed and remanded.

---

**No. 1-21-0794**

---

| | |
|---|---|
| **Cite as:** | *Lukanty v. Moglinicki*, 2022 IL App (1st) 210794 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 19-L-5873; the Hon. Moira S. Johnson, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Glen J. Dunn Jr., Michael J. Hallock, and Dennis Stefanowicz, of Glen J. Dunn & Associates, Ltd., of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Steven B. Fisher, of Ripes, Nelson, Baggot & Kalobratsos, P.C., and Barrett W. Whalen, of Purcell & Wardrope Chtrd., both of Chicago, and Michael R. Graf, of Michael R. Graf, P.C., of Arlington Heights, for appellees. |

---