NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (4th) 230571-U

NO. 4-23-0571

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 26, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| SHERRI DOWNS, | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Stephenson County |
| MANDY PETERS, | ) | No. 22LA17 |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | Honorable |
| | ) | David M. Olson, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices Zenoff and Doherty concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court did not err in granting defendant's motion to enforce the settlement agreement and dismissing plaintiff's lawsuit with prejudice.

¶ 2        Plaintiff, Sherri Downs, filed a negligence complaint against defendant, Mandy Peters, seeking damages for injuries she sustained in an automobile crash. Defendant filed a motion to enforce a settlement agreement purportedly reached by the parties and to dismiss plaintiff's complaint with prejudice. Following an evidentiary hearing, the trial court entered a written order granting defendant's motion and dismissing plaintiff's complaint with prejudice.

¶ 3        Plaintiff appeals the trial court's judgment, arguing the court erred in granting defendant's motion because she never gave her attorney authority to settle the case on her behalf or, alternatively, a condition precedent to the settlement was not satisfied. We affirm.

¶ 4                                    I. BACKGROUND

¶ 5         On June 23, 2022, plaintiff filed a complaint against defendant seeking damages for injuries she sustained in an automobile crash. Plaintiff alleged that she suffered severe injuries as a result of defendant's negligence and was forced to miss work and incur medical expenses. She sought damages in excess of $50,000.

¶ 6         On December 14, 2022, defendant filed a "Motion to Enforce Settlement Agreement and to Dismiss With Prejudice," alleging the parties had entered into a settlement agreement prior to plaintiff initiating her negligence suit. Defendant attached numerous exhibits to her motion. Below, we will summarize the relevant facts contained in the exhibits.

¶ 7         On April 13, 2022, a demand letter, which was electronically signed by plaintiff's attorney, Timothy Mahoney, and on his law firm's stationery, was sent to defendant's insurer. The demand letter provided, in relevant part, "they are willing to sign a release and settlement of all claims. They would be willing to sign a release for a settlement for the policy limits available along with verification of the same." On May 11, 2022, the insurance company sent a response letter to Mahoney's office confirming its acceptance of the policy limits demand and tendering $100,000 "as full and final settlement of any and all of [plaintiff's] bodily injury damages." The response also included an attached release for plaintiff to sign. The same day, a letter electronically signed by Mahoney (the confirmation letter) was sent to defendant's insurance company indicating "[a]s we discussed, we have agreed to settle the claim for $100,000.00 for [plaintiff]." The letter requested that the settlement proceeds be sent to Mahoney's office and made payable to plaintiff and Mahoney's client trust account. Plaintiff never signed the release and instead initiated the underlying negligence action.

¶ 8      On April 11, 2023, plaintiff filed a response to defendant's motion. Plaintiff alleged she never agreed to settle the claim, and the demand letter dated April 13, 2022, "was sent in a hasty mistake by staff." Plaintiff further asserted that her "counsel was under a reasonable, but erroneous, misunderstanding after speaking with the client by phone, that the matter could achieve settlement for the amount in question. However, upon meeting in-person extensively thereafter the phone conversation [*sic*], Plaintiff herself does not consent to such Release." Based on the above allegations, plaintiff argued the parties never entered into an enforceable settlement agreement because she did not grant Mahoney authority to settle the case on her behalf.

¶ 9      By agreement of the parties, the trial court conducted an evidentiary hearing on defendant's motion on May 9, 2023. Mahoney and plaintiff were the only witnesses to testify. The demand letter, confirmation letter, and e-mail correspondence between Mahoney's office and defendant's attorney, Mark McClenathan, were admitted into evidence without objection.

¶ 10      Mahoney testified that he did not authorize any member of his office staff to transmit either the demand letter or the confirmation letter, and he did not learn of their existence until August 2022, when he was so informed by McClenathan. According to Mahoney, one of his administrative assistants drafted and sent both letters without first receiving authorization to do so. The administrative assistant electronically affixed Mahoney's signature to the letters. Upon learning of the letters, Mahoney informed McClenathan that they had been sent by mistake. Mahoney testified that every time he spoke with plaintiff about resolving the case, the conversations occurred in person, in his office, and with plaintiff's aunt present. Plaintiff consistently indicated she was not interested in settling the case for the policy limits. Mahoney testified that he had a phone conversation with plaintiff on a Sunday in October 2022, at the

conclusion of which he believed "she had given me authority to resolve the case." The following day, Mahoney informed McClenathan that he thought the case was settled, and, at a status hearing on October 25, 2022, he made the same representation to the trial court. Mahoney testified that he subsequently spoke with plaintiff and she informed him that "she did not believe that she gave me authority to resolve the case."

¶ 11    On cross-examination, Mahoney acknowledged that defendant's insurer sent a $100,000 check to his office, and the check had been deposited into his firm's client trust account. E-mail correspondence between Mahoney's office and McClenathan was admitted into evidence as an exhibit. The exhibit showed that on October 25, 2022, McClenathan e-mailed Mahoney a copy of a "Full and Final Release and Indemnity Agreement" for plaintiff to sign and a stipulated order to dismiss plaintiff's complaint for Mahoney to sign. On November 21, 2022, McClenathan again e-mailed Mahoney requesting signatures on the release and on the stipulated order to dismiss. The same day, one of Mahoney's assistants replied to McClenathan and informed him that plaintiff "is supposed to be coming in tomorrow night to sign everything."

¶ 12    Plaintiff testified that she never gave Mahoney authority to settle her case. Plaintiff further testified that, despite the miscommunications between the two of them, she still wanted Mahoney to continue representing her in the underlying proceedings. Following the arguments of the parties, the trial court took the matter under advisement.

¶ 13    On May 19, 2023, the trial court entered a written order granting defendant's motion to enforce the settlement agreement. It stated that "the heart of the matter" started in October 2022, when plaintiff and Mahoney had a Sunday phone conversation. Based on Mahoney's testimony concerning his phone conversation with plaintiff and his subsequent representations to McClenathan the following day and to the court at the status hearing on

October 25, 2022, the court concluded plaintiff had indeed accepted the terms of the settlement agreement during the conversation with Mahoney. According to the court, "The evidence is clear that [plaintiff] accepted the settlement as posited during the October Sunday phone conversation with Attorney Mahoney, because no other conclusion can be drawn from the actions of Attorney Mahoney confirming settlement to Attorney McClenathan and confirming settlement to the Court on October 25." In reaching its conclusion, the court discredited Mahoney's testimony there had been a miscommunication between himself and plaintiff which led Mahoney to mistakenly believe plaintiff had authorized him to settle the case. The court stated, "there is no viable evidence or fact by which the Court could conclude anything other than that [plaintiff] agreed to the settlement and there was not a 'miscommunication.' "

¶ 14        The trial court ordered plaintiff to execute the release previously tendered by defendant and dismissed plaintiff's cause of action with prejudice.

¶ 15        This appeal followed.

¶ 16                              II. ANALYSIS

¶ 17        On appeal, plaintiff argues the trial court erred in granting defendant's motion to enforce the settlement agreement and dismissing her case with prejudice.

¶ 18        As an initial matter, defendant argues that plaintiff has forfeited most of her appellate contentions by failing to cite to relevant case law or the pages of the record relied on, and by failing to provide sufficient reasoning in support of her contentions. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). (providing an appellant's brief must "contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on"). We have difficulty understanding some of plaintiff's arguments and agree with defendant that certain portions of plaintiff's brief are not in compliance with Rule 341.

- 5 -

Therefore, we will address only the arguments in plaintiff's brief that may fairly be identified by this court and which are supported by relevant citations and reasoning. See *id.*

¶ 19 Essentially, plaintiff raises two arguments on appeal. Plaintiff's main contention is that the trial court erred in finding an enforceable settlement agreement existed because her "testimony that she did not authorize settlement means that [Mahoney] could not have bound her to this settlement." She claims the court was wrong to discredit Mahoney's testimony there had been a miscommunication between himself and plaintiff that then led him to mistakenly believe plaintiff agreed to settle her case. Alternatively, she contends the court erred because her execution of the release was a condition precedent to the settlement that was never satisfied. We will address each argument in turn.

¶ 20 "A settlement agreement is in the nature of a contract, and construction and enforcement of such agreements are governed by principles of contract law." *Solar v. Weinberg*, 274 Ill. App. 3d 726, 731 (1995). "Settlements based on oral agreements may be enforced as long as there is clearly an offer and an acceptance and a meeting of the minds as to the terms of the agreement." *Johnson v. Hermanson*, 221 Ill. App. 3d 582, 584 (1991); see also *Lampe v. O'Toole*, 292 Ill. App. 3d 144, 146 (1997) ("[A]n oral settlement agreement is enforceable absent mistake or fraud."). "A meeting of the minds exists whenever the parties' conduct objectively indicates an agreement to the terms of the settlement, even if one or more parties did not subjectively intend to be bound." *County Line Nurseries & Landscaping, Inc. v. Glencoe Park District*, 2015 IL App (1st) 143776, ¶ 33. "Public policy favors settlements and dictates that, in the absence of fraud or duress, settlements once made should be final." *Johnson*, 221 Ill. App. 3d at 585. "An attorney who represents a client in litigation has no authority to settle a claim of the

client absent the client's express authorization to do so." (Internal quotation marks omitted.) *Lukanty v. Moglinicki*, 2022 IL App (1st) 210794, ¶ 34.

¶ 21 "Where the trial court has held an evidentiary hearing, the appellate court reviews its findings of fact under the manifest weight of the evidence standard." *Id.* ¶ 27. "A finding regarding the validity of a settlement agreement is against the manifest weight of the evidence only if the opposite conclusion is clearly apparent or where a decision is palpably erroneous and wholly unwarranted." (Internal quotation marks omitted.) *Id.*

¶ 22 Here, in finding the settlement agreement was enforceable, the trial court found that plaintiff accepted the settlement offer during the October phone conversation with Mahoney, which Mahoney then communicated to defense counsel and the court. Further, the court did not believe Mahoney's testimony that there had been a miscommunication between Mahoney and plaintiff or that he was mistaken in his belief plaintiff had accepted the settlement offer in the Sunday phone call. We find the record supports the court's findings.

¶ 23 First, Mahoney clearly testified he had a phone call with plaintiff on a Sunday in October 2022 in which he believed "she had given me authority to resolve the case." According to his testimony, he then informed defense counsel of his client's acceptance of the settlement offer and told the trial court at a hearing on October 25 that the case was settled. As the court noted, these actions by Mahoney are proof that plaintiff communicated her acceptance of the settlement offer in the Sunday phone call. Next, the court noted Mahoney informed the court on October 25 that plaintiff " 'was supposed to come in and sign the release.' " Mahoney conveyed a similar message to defense counsel in a November 2022 e-mail, stating plaintiff "is supposed to be coming in tomorrow night to sign everything." As the court remarked in its decision, why would Mahoney suggest that his client would be coming in to sign a release if she had not, in

fact, accepted defendant's settlement offer? We think the record supports the court's finding that plaintiff agreed to settle her case, and thus the finding is not against the manifest weight of the evidence.

¶ 24 Although plaintiff testified that she did not authorize Mahoney to settle the case and Mahoney testified he was mistaken in believing she had done so, the trial court, as the trier of fact, was free to discount their testimony, especially in light of Mahoney's representations to others made following his Sunday phone call with plaintiff. In its written decision, the court surmised "that [p]laintiff may have waffled and ultimately changed her mind against settling after she had agreed to do so." The court's theory is not unreasonable in light of the evidence. It would not be the first time a litigant has second-guessed a decision to accept a settlement offer. Accordingly, we conclude the court did not err in its evaluation of the hearing testimony.

¶ 25 Alternatively, plaintiff argues the trial court erred in granting defendant's motion to enforce the settlement agreement because her execution of the release was an unsatisfied condition precedent to the settlement. In support of her contention, plaintiff asserts that "the written release here should have controlled as the release was condition precedent [*sic*] to the agreement in the demand letter." Plaintiff then points to the demand letter and notes that it specifically requested a release in exchange for settlement funds. We reject plaintiff's argument.

¶ 26 We first note that plaintiff has forfeited this argument by failing to raise it in the trial court. See, *e.g.*, *Williams v. Bruscato*, 2019 IL App (2d) 170779, ¶ 24 ("It is well settled in Illinois that an appellant who fails to raise an issue before the trial court forfeits the issue and may not raise it for the first time on appeal."). In the court below, plaintiff argued only that the settlement agreement was unenforceable because she never granted Mahoney authority to settle

the case on her behalf. However, defendant does not argue forfeiture on appeal, and we will therefore address plaintiff's contention on the merits.

¶ 27        "Even where the parties contemplate the execution of a written release or stipulation, this writing need not be a condition precedent to a valid settlement agreement." *Lampe*, 292 Ill. App. 3d at 147. "A proper oral settlement agreement is enforceable and the lack of a written release does not control unless the parties intended to make a release a condition precedent to the agreement." *Id.* at 146. "Whether the parties intended to condition a settlement on the execution of a writing is a question of fact" that we review using the manifest-weight-of-the-evidence standard. *Id.* at 147; see *Lukanty*, 2022 IL App (1st) 210794, ¶ 27 (stating that a finding is against the manifest weight of the evidence if the opposite conclusion is clearly apparent).

¶ 28        In *Lampe*, 292 Ill. App. 3d at 145, the plaintiffs brought a negligence action against the defendant seeking damages for injuries sustained in an automobile crash. The defendant filed a motion to enforce the settlement agreement and to dismiss the negligence complaint, alleging "the parties verbally agreed to settle all plaintiffs' claims for $28,750 from [the defendant's] insurer." *Id.* The plaintiffs responded by arguing the settlement agreement was not enforceable because they never signed the release that had been tendered by the defendant's attorney. *Id.* The parties stipulated that the plaintiffs had agreed to the settlement offer and authorized their attorney to accept it. *Id.* at 146. Following a hearing, the trial court granted the defendant's motion and dismissed the plaintiffs' complaint. *Id.* at 145. On appeal, the plaintiffs argued, in part, "there was no binding agreement because, before the court entered judgment, they refused to complete a release [that the defendant's] attorney sent them after they accepted the offer." *Id.* at 147. The *Lampe* court rejected the plaintiffs' argument, holding instead that a

"proper oral settlement agreement is enforceable and the lack of a written release does not control unless the parties intended to make a release a condition precedent to the agreement." *Id.* at 146. It found that nothing in the record suggested "that, during their negotiations, either party specified that the agreement hinged on the execution of a written release." *Id.* at 147. "The form release, though prolix, does not materially alter the settlement. It merely embodies the agreement the parties had already reached: that, in return for $28,750, plaintiffs would forego their suit against [the defendant]." *Id.*

¶ 29 Here, as was the case in *Lampe*, nothing in the record suggests the parties contemplated that the settlement agreement would not be enforceable until the release was signed by plaintiff. See *id.* Neither Mahoney nor plaintiff testified at the hearing that they believed execution of the release was a condition precedent to the settlement. The only evidence plaintiff points to in support of her contention is the demand letter itself. However, again, like in *Lampe*, the demand letter merely embodied the terms of the settlement agreement. See *id.* Accordingly, for the reasons discussed, we find the trial court did not err in granting defendant's motion to enforce the settlement agreement.

¶ 30                                        III. CONCLUSION

¶ 31            For the reasons stated, we affirm the trial court's judgment.

¶ 32            Affirmed.